In the Matter of the Application of ALBERT OTTINGER, Attorney-General of the State of New York, Appellant, for a Peremptory Mandamus Order against JOHN R. VOORHIS and Others, Constituting the Board of Elections of the City of New York, Respondents.

Second Department, May 22, 1925.

Elections — voting machines — peremptory mandamus to compel board of elections of city of New York to comply with Election Law, § 243, and adopt for use in New York city any kind of voting machine approved by State Board of Voting Machine Commissioners or authorized by law — no allegation that particular machine has been adopted — mandamus will not lie where another adequate remedy exists — Election Law, art. 9, provides for procedure to procure voting machines for New York city where board of elections fails to act — board of elections having failed to act before April 1, 1922, has no power to act now — duty rests on Secretary of State — peremptory mandamus denied.

The petition by the Attorney-General for a peremptory mandamus order, directing the board of elections of the city of New York to forthwith comply with section 243 of the Election Law, and adopt for use at elections in the city of New York any kind of voting machine approved by the former State Board of Voting Machine Commissioners or the use of which has been specifically authorized by law, does not contain vital allegations to the effect that the former State Board of Voting Machine Commissioners or the Secretary of State have approved any particular voting machine, or that the use of a particular voting machine has been specifically authorized by law. However, the proceeding will not be dismissed because of the defects in the petition but will be disposed of on the merits.

Mandamus, which will not lie where there is another adequate remedy by which the same relief may be secured, must be denied in this case, since article 9 of the Election Law provides the procedure whereby voting machines for the city of New York may be secured on the failure of the board of elections to act prior to April 1, 1922.

Furthermore, under the statute the board of elections having failed to act before the 1st day of April, 1922, its power to provide voting machines then ceased, and the duty of providing voting machines thereafter was cast upon the Secretary of State, and, therefore, since the board of elections has no power at the present

time to adopt a voting machine for use in New York city or to contract for the purchase or use of voting machines, mandamus will not issue to compel them to perform an act beyond their power.

APPEAL by the petitioner, Albert Ottinger, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 1st day of April, 1925, denying petitioner's application for a peremptory mandamus order directing the defendants to forthwith comply with the provisions of section 243 of the Election Law and adopt for use at elections in the city of New York any kind of voting machine approved by the State Board of Voting Machine Commissioners, or the use of which has been specifically authorized by law.

*A. S. Gilbert, Special Deputy Attorney-General,* for the appellant.

*Charles J. Druhan* [*George P. Nicholson, Corporation Counsel,* and *Arthur J. W. Hilly* with him on the brief], for the respondents.

KELLY, P. J.:

The petitioner applied for a peremptory mandamus order " directing the said respondents, constituting the Board of Elections of the City of New York, to forthwith comply with the provisions of section 243 of the Election Law and adopt for use at elections in the city of New York any kind of voting machine approved by the State Board of Voting Machine Commissioners or the use of which has been specifically authorized by law." Mr. Justice LAZANSKY at Special Term (N. Y. L. J. March 28, 1925) was of opinion that on the papers presented to the court, the respondent board of elections had performed its full duty under article 9 of the Election Law relating to the use of voting machines, as enacted in 1922, and the various amendments thereto, and he denied the application.   I think he was right in his conclusions.

Section 243 of the Election Law of 1922 (as amd. by Laws of 1924, chap. 442), which was derived from section 393 of the former Election Law of 1909 (as amd. by Laws of 1921, chap. 391, and Laws of 1922, chap. 115), compliance with which by the board of elections, so far as it affects the city of New York, is demanded, provides: " The board of elections of the city of New York and the common council or other legislative governing body of each other city of the first class shall * * * adopt for use at elections any kind of voting machine approved by the former State Board of Voting Machine Commissioners, or by the Secretary of State, or the use of which has been specifically authorized by law; and thereupon such voting machine may be used at any or all elections, other than primary elections, held in such city,

*  *  *  or in any part thereof, for voting, registering and counting votes cast at such elections. Voting machines of different kinds may be adopted for different districts in the same city, town or village. If, on or before the first day of April, nineteen hundred and twenty-two, such board of elections, common council or legislative governing body, as the case may be, of a city of the first class, shall have failed to agree thereon, the Secretary of State, within ten days thereafter, shall adopt a kind or kinds of voting machine for use at elections in such cities. A sufficient number of voting machines shall thereafter be provided in the manner prescribed in section two hundred and forty-six so that at the general election in nineteen hundred and twenty-two polling places in such cities to the extent of at least fifteen per centum shall be equipped therewith. At least an additional forty per centum of the polling places in such cities shall be so equipped with voting machines for use at the general election in nineteen hundred and twenty-three. All the remaining polling places in such cities shall be so equipped with voting machines for use at the general election in nineteen hundred and twenty-four."

Mandamus will issue only to compel performance of an official duty clearly imposed by law, when there is no other adequate specific remedy, the duty being positive, not discretionary, and the right to its performance so clear as not to admit a reasonable doubt or controversy. (*Matter of Burr* v. *Voorhis*, 229 N. Y. 382, 387; *Matter of Eiss* v. *Summers*, 205 App. Div. 691; *Matter of Craig* v. *Brady, No. 1*, 207 id. 848; *City of New York* v. *Empire City Subway Co., Ltd.*, 202 id. 494; *People ex rel. Wessell, Nickel & Gross* v. *Craig*, 199 id. 845.) To entitle a party to mandamus, he must not only be possessed of a clear legal right to have an official duty performed, but he must be without any other adequate remedy to compel the performance of that duty. (*Durant* v. *Whedon*, 201 App. Div. 196.) A mandamus order should specify with precision the acts to be done. (*People ex rel. Hasbrouck* v. *Supervisors*, 135 N. Y. 522; *Matter of International Railway Co.* v. *Schwab*, 203 App. Div. 68.) A general direction to comply with the provisions of a certain statute without pointing out specifically what is to be done is insufficient. Such a direction is no more effective than the statute itself. (*State ex rel. Hawes* v. *Brewer*, 39 Wash. 65.)

Applying these familiar principles to the case before us we find, in the first place, that the relief demanded is somewhat unusual. The petitioner asks that the respondent board be directed to comply with the provisions of section 243 of the Election Law (*supra*) and that they be directed to adopt for use at elections in the city " any kind of voting machine approved by the State

Board of Voting Machine Commissioners or the use of which has been specifically authorized by law." But the board of elections is expressly limited by the statute to voting machines approved by the former State Board of Voting Machine Commissioners or by the Secretary of State, or to voting machines the use of which has been specifically authorized by law. There is no allegation in the petition that the former State Board of Voting Machine Commissioners, or the Secretary of State, have approved any particular voting machine, nor is there allegation that the use of any particular voting machine has been specifically authorized by law. A mandamus order directing the adoption for use at elections of " any kind of voting machine " approved by the authority mentioned in the statute without any statement that such approval has been had would be a mere academic direction, meaningless and unenforcible. But the reason for the omission of these vital allegations is probably found in the history of the transactions of the respondent board contained in the affidavit of Mr. Voorhis, the president of the board, read in opposition to the motion for mandamus and in the various resolutions attached to that affidavit. While the petition should contain a statement of the facts justifying the issuance of this drastic process, it does not seem that an application of this description instituted by the chief law officer of the State should be dismissed because of defects in the petition when the facts are before the court on the papers submitted in opposition to his application. And these facts are not controverted in any way by the petitioner.

One of the basic requirements justifying the issuance of mandamus is the necessity for such process. Mandamus will not issue where the petitioner has another adequate remedy. The object sought to be attained by the petition is the use of voting machines at the city elections. In the case before us the very statute imposing the duty sought to be enforced contains provisions and specifies the procedure to be followed. In the first place the particular style of voting machine must be selected by some authority other than the board of elections. And if, on or before April 1, 1922, the members of the board of elections fail to agree, if they did not adopt the voting machine selected by the former Board of Voting Machine Commissioners or by the Secretary of State or specifically authorized by law, the Legislature pointed out what should be done. It is not provided that the board of elections shall be compelled to act by mandamus. On the contrary, they become *functus officio*, and the power to adopt " a kind or kinds of voting machine " is taken away from the board of elections and vested in the Secretary of State. The Secretary of State is directed " within ten days

thereafter," *i. e.*, after the 1st day of April, 1922, to perform the duty theretofore imposed upon the board of elections. I can find no authority for directing the board of elections in the year 1925 to adopt any particular kind of voting machine, because they lost the power to do this by their failure to agree within the time limited by the statute. Before the 1st day of April, 1922, they could have adopted any voting machine which had theretofore been approved by the State authorities. If the State authorities had approved several varieties of voting machines, the selection of one of the approved machines might have been of some importance. If the State authorities designated but one style of voting machine, the board of elections had no choice. But after the 1st day of April, 1922, the power to select the voting machine was in the Secretary of State, not in the board of elections. The intention of the Legislature appears to be clear, because in the succeeding section 246 of the Election Law of 1922 we find provisions for obtaining the voting machines " adopted for use " as provided in section 243. If the voting machines so adopted by the board of elections on or before April 1, 1922, or, in case of their failure to agree, by the Secretary of State, within ten days thereafter, " shall not have been provided on or before the first day of May, nineteen hundred and twenty-two," the board of elections or the common council or other legislative body " shall provide a sufficient number of voting machines to satisfy the requirements of section two hundred and forty-three of this chapter." And, again, the Legislature provides the procedure. If the approved voting machines required for the election of 1922 are not provided by the board of elections or the city authorities on or before the 15th day of May, 1922, and for 1923 and 1924 on or before the first day of March in each of such years, then the machines shall be " provided " by the Secretary of State; " such contract or contracts shall be awarded, made and executed by the Secretary of State on approval of the Attorney-General as to form." The Legislature in its wisdom appears to have vested the final power to prescribe the kind of voting machine to be used and to make contracts for the supply of the machines in the Secretary of State.

It seems to me that the board of elections in 1925 is without power to adopt a voting machine or to contract for the purchase or use of voting machines.

The history of the transactions of the board contained in the affidavit of the president and not controverted, shows that as far back as May 31, 1921, the board of elections notified the Secretary of State that they were unable to agree upon the adoption of a voting machine for the election of 1921, and that on June 20, 1921, the

Secretary of State pursuant to Election Law (former section 393; now section 243, *supra*), adopted " the U. S. Standard Voting Machines, manufactured by the Automatic Registering Machine Corporation of Jamestown, as the voting machine to be used by the public in the city of New York at the next general election." Then followed failure on the part of the board of elections to agree upon the allotment of the voting machines among the various election districts in the city and notice of such failure to agree given by the board to the Secretary of State. On July 12, 1921, the Secretary of State determined the election districts in which the voting machines should be installed at the election of 1921, and notified the board of elections of his determination. Without following the happenings at the various meetings of the board of elections in detail, it appears that thereafter the board of elections applied to the board of estimate and apportionment of the city of New York for an appropriation to purchase the voting machines, and the chief clerk of the board was directed to prepare the proposal, bid and specifications for the use of bidders on the contract to be made for furnishing the voting machines. It appears that on August 3, 1921, the board of estimate appropriated $340,000 for 350 voting machines and the board of elections advertised for bids. At a meeting of the board of elections on August 30, 1921, " the President opened the box containing the bids and announced that there was one bid from the Automatic Registering Machine Co., of Jamestown, N. Y., for supplying the board with 350 voting machines at the amount of $330,875.00." Protests were filed with the board by various labor organizations calling attention to alleged violations of the Labor Law by the Jamestown company which would interfere with acceptance of its bid. These protests were referred to the corporation counsel, who thereafter, on September 8, 1921, advised the board to reject the bid. But the bid was not rejected, the board dividing on the motion to reject, two to two, and it was declared lost.

But the Secretary of State, in whom was lodged the power to contract for the voting machines, does not appear to have made any contract, and voting machines were not provided or used at the election of 1921.

In November, 1921, the board appears to have commenced preparations for the 1922 election by adopting a resolution calling on the board of estimate and apportionment for an appropriation of $940,000 to purchase voting machines necessary to equip thirty-five per cent of the election districts in New York city.

On March 11, 1922, section 393 of the former Election Law of 1909 was amended by chapter 115 of the Laws of 1922 so as to

provide for adoption of the approved machine by the board of elections of the city of New York before April 1, 1922, or in case of said board's failure " to agree thereon," by the Secretary of State within ten days thereafter.   A new section was added* vesting in the Secretary of State power to allot the machines to the various election districts of the city of New York for the election of 1922, and providing that in case the board did not execute a contract for the supply of the machines for 1922, 1923 and 1924, the contracts should be awarded, made and executed by the Secretary of State on approval by the Attorney-General.   The cost of the machines was to be paid by the city of New York.

It seems to me that this prolix record of the proceedings of the board of elections in connection with the evident intention of the Legislature to compel this very radical change in the manner of conducting elections indicates that the board endeavored, so far as it was able, to comply with the law.   It is true that there were resolutions introduced continually, indicating that there was a difference between the members of the board not only as to the wisdom of the change, but as to the adoption of the particular voting machine selected by the Secretary of State.   The resolutions were at times lost by a tie vote, the two Democratic commissioners voting one way and the two Republican commissioners the other way.   The board had nothing to do with the necessity or desirability of the proposed change in the manner of voting, or for that matter with the choice of the voting machine.   If they could not agree, the whole matter was taken out of their hands.   It is stated in the affidavit of Mr. Voorhis that in September, 1921, one Benjamin Day brought a proceeding in the Supreme Court, New York county, to compel the board to award a contract to the Automatic Registering Machine Corporation of Jamestown, the only bidder, but that the application was denied by the court at Special Term.

But it appears from the affidavit referred to and the resolutions attached, that the board of elections reported their disagreements to the Secretary of State, and that subsequent to his selection of this one particular voting machine they made application to the board of estimate and apportionment for appropriation of money with which to provide the machines and that appropriations were made.   President Voorhis makes affidavit that when in 1922 the board advertised for bids under the provisions of the city charter (a necessary but somewhat useless procedure, as there could be but one bidder, the maker of the particular machine selected

---

* See Election Law of 1909, § 395-a, as added by Laws of 1922, chap. 115; now Election Law of 1922, § 246.— [REP.

by the Secretary of State), the Jamestown corporation refused to agree to the conditions of the contract prepared by the corporation counsel and insisted that payment for the machines should be made before they were delivered to the city. It is also alleged that a hearing was had before the Secretary of State in Albany on May 24, 1922, and the affidavit continues: " No award of contract was ever made by the Secretary of State in accordance with the powers vested in him by chapter 115 of the Laws of 1922. The Board of Elections being notified by the Secretary of State that the Voting Machine Company manufacturing the Standard Voting Machine was unwilling  to enter into a contract with the City of New York for the supplying of these machines, and thereafter no further action was taken by the Board in regard to voting machines and your deponent verily believes that all the powers vested in the Board in accordance with the provisions of section 243 of the Election Law, being chapter 115 of the Laws of 1922, were wholly, completely and entirely complied with and exhausted by this Board, in that in accordance with the provisions of that chapter and section 243 of the Election Law, every effort was made by the Board to agree upon a voting machine for use at the general election of the City of New York and that upon their failure to agree, the provisions of said section 243 were subsequently carried into effect by the adoption of a voting machine by the Secretary of State."

President Voorhis' affidavit continues: " That the failure to provide these voting machines in accordance with the provisions of section 115 (*sic*) was due to no neglect or dereliction of duty or failure to comply with the provisions of law by your deponent and the Board of Elections, but was due to the fact that the manufacturer of the machine adopted by the Secretary of State failed to submit a proposal for the supplying of these machines in accordance with the proposal, bids and advertisements duly made for such machines by the Board of Elections and that the Secretary of State, upon whom the duty then devolved of making a contract on behalf of the city, failed to enter into such contract because of the refusal of the manufacturer to enter into any contract or agreement with the Secretary of State or any other party for the purpose of supplying machines for voting in the City of New York."

The Legislature evidently intended to provide for election by voting machines. They have not been installed in New York city, but on the papers before us the fault is not with the board of elections. I cannot see any conceivable theory upon which the court can mandamus the board of elections to " adopt    *    *    * any kind of voting machine " because they could not agree back

in 1921 and so notified the Secretary of State, and thereupon the power to adopt machines was taken away from them.

This is the only question before the court upon this appeal. We do not attempt to pass upon the other questions suggested by the learned Attorney-General concerning the effect of the designation made by the Secretary of State in 1921 and 1922. These questions are not before us. The record here shows that the corporation manufacturing the voting machines selected by the Secretary of State in 1921 or 1922 refused to enter into a contract to supply the machines. While we may agree with the statement in the points of the learned Attorney-General that the situation is " already confused," we can only determine the question presented by this appeal, which is the propriety of the peremptory mandamus applied for by the Attorney-General and refused by the Special Term.

We know that at the recent session of the Legislature an act was passed by both houses of the Legislature adding a new section to the Election Law to be known as " § 246-a," purporting to authorize the Secretary of State to designate and adopt a voting machine for use at general elections in New York city, to be purchased by the Secretary of State and delivered to the board of elections for use at all general elections. The act as passed provided that the cost of such machines should be borne by the city, paid in the first instance by the State Comptroller and the amount deducted from the share of any State taxes due the city. This act was vetoed by the Governor on April 17, 1925, upon the ground that, in effect, it provided for the taking of State funds and payment thereof to a private corporation for material furnished to the city of New York. The Governor said in his veto message that he deemed the bill unconstitutional as violative of the State Constitution (Art. 3, § 21), prohibiting payments of State money except in pursuance of an appropriation. He referred to the pendency of these mandamus proceedings in this court. He said the bill established a " very wicked precedent," and " It seems to me that the sovereign power should be able to compel compliance with law through the orderly processes of the courts rather than by the strong-armed methods suggested in the withholding of funds to which the city is properly and legally entitled."

The passage of this act by the Legislature in 1925 has this significance. When voting machines had not been adopted, purchased and delivered prior to May 1, 1925, the responsibility and duty of providing the machines was placed by the Legislature, not on the board of elections, but solely on the Secretary of State. And I think this was in line with the preceding legislation.

The order denying the application for a peremptory mandamus

order should be affirmed as matter of law and not in the exercise of discretion, but without costs.

Present — KELLY, P. J., JAYCOX, MANNING, KELBY and KAPPER, JJ.

Order denying motion for peremptory mandamus order unanimously affirmed as matter of law and not in the exercise of discretion, without costs.