■    In the Matter of WILLIAM WATKINS, Petitioner, v PHILIP TOIA, as Commissioner of the New York State Department of Social Services, et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent Commissioner of the New York State Department of Social Services, dated April 5, 1976 and made after a statutory fair hearing, which affirmed a determination of the respondent Commissioner of the Nassau County Department of Social Services denying petitioner's application for medical assistance. Determination annulled, on the law, without costs or disbursements, and petition granted to the extent that respondents are directed to grant petitioner's application for medical assistance in accordance herewith. We note at the outset that the record amply supports the determination of the respondent Commissioner of the New York State Department of Social Services, that petitioner and his wife "do not meet the categorical eligibility requirements for medical assistance." However, it appears that under section 366 (subd 2, par [c]) of the Social Services Law petitioner does qualify for payment of a "portion" of the $1,432 hospital bill incurred by him. That section provides, *inter alia,* as follows: "Any inconsistent provision of law notwithstanding, medical assistance shall also be given in the event of catastrophic illness to any person not otherwise eligible under this section; provided, however, that such assistance shall be limited to *payment for that portion of the cost of inpatient care,* services and supplies while in a medical institution which, after application of available insurance benefits and resources not exempt * * * *is in excess of either (i) twenty-five per centum of the recipient's annual net income or (ii) that amount of recipient's annual net income in excess of the applicable cash public assistance eligibility level, whichever is less*" (emphasis supplied). Petitioner applied for medical assistance on November 13, 1975. He was hospitalized for four days from January 5 through January 8, 1976. While his income during 1975 was irregular, his income at the times of his application and his hospitalization was approxi-

mately $78 per week as a participant in a training program. At the fair hearing held on February 26, 1976, petitioner testified that his actual net income during 1975 was $2,954.44; that his income from the training program had terminated on January 30, 1976 and that he was unemployed; but that his wife had just obtained employment. The agency *projected* his "annual net income" by averaging the eight checks, which he received during the period from October 10 through December 5, 1975 (average $77.28 per week) and then multiplying by 52, arriving at the figure $4,018.56 (52 times $77.28), 25% of which is $1,004.64. In arriving at its determination that petitioner did not qualify for medical assistance under the statute, the agency used (1) as the "actual net income" the projected figure instead of the income actually received by petitioner and (2) as the "cost", the cost to the State at medical reimbursement rates instead of the actual amount for which the petitioner was billed. Petitioner was informed that he could reapply if his income had been reduced. "The interpretation placed on a statute by the agency charged with its administration if not irrational or unreasonable will be upheld" *(Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist,* 38 NY2d 137, 142; see, also, *Matter of Lezette v Board of Educ.,* 35 NY2d 272, 281). It is arguable that since the bill is not due until after the services have been rendered, and since the applicant can reapply if his actual income falls below the projected income, his ability to pay is better measured by a projection of annual income based on immediate income rather than by past actual income which may have been dissipated. There being a rational basis for the agency's interpretation of the term "annual net income", its use of a projected income is neither arbitrary nor capricious. Applying respondents' projected figure of $4,018.56 for petitioner's "annual net income", it appears that, pursuant to the above-cited statute, petitioner would qualify for payment of $593.44 toward his total bill of $1,432 (see 18 NYCRR 360.31). Respondents have refused any payment, however, on the ground that medical assistance reimbursement rates at the hospital where petitioner was treated would total only $482.32 for the services rendered. Respondents reason that because petitioner is liable for payment of $838.56 toward his $1,432 bill, and because petitioner's liability exceeds the reimbursement rate, nothing need be paid by them. This reasoning is arbitrary and in total contravention of both section 366 (subd 2, par [c]) of the Social Services Law and respondents' own regulations (see 18 NYCRR 360.31). Section 366 (subd 2, par [c]) of the Social Services Law is obviously intended to cover people who have suffered a "catastrophic illness" in the economic sense. The word "cost" in that section apparently refers to the cost to the patient; the respondents' interpretation that it refers to the cost to the agency is unreasonable. A low reimbursement rate could defeat the intent of the statute to assist persons who have incurred catastrophic medical expenses. In the context of this proceeding, respondents' position means that petitioner is liable for the full $1,432, when in fact the statute expressly requires them to cover a "portion" of the total bill. We are mindful of the fact that respondents are limited by section 2807 of the Public Health Law to reimbursement rates approved by the State Director of the Budget, and it is not disputed that the maximum allowable reimbursement to petitioner is $482.32. In computing the amount of medical assistance to be granted to the petitioner, all of the above factors should be taken into consideration. Margett, Acting P. J., Shapiro, Titone and Suozzi, JJ., concur.