*61 OPINION OF THE COURT
Jones, J.
In the absence of a demonstration of a lack of need, financial assistance directed to dependent children in the form of a grant under the Aid to Families with Dependent Children program may not be discontinued or reduced because their parents have refused to comply with instructions from the Department of Social Services with respect to the disposition of certain nonessential assets belonging to the parents.
Petitioners and their six minor children were the recipients of public assistance pursuant to an Aid to Families with Dependent Children (AFDC) grant. On December 1, 1976 the parents were advised by respondent Onondaga County Department of Social Services that an automobile registered in the name of the husband had been found to be a nonessential resource; accordingly, the department instructed the husband to sell the automobile within 30 days or face discontinuance of the entire grant. The husband failed to dispose of the vehicle and the department, pursuant to its "Notice of Intent to Discontinue Public Assistance” dated December 21, 1976 discontinued the grant as to both parents and all six children effective January 1, 1977.
At the parents’ request, a fair hearing was held before the State commission on January 10, 1977. At the hearing, the husband, appearing without counsel, testified that although the automobile in question was registered in his name it was actually owned and used by his son who had purchased it two years earlier for approximately $1,500. According to the father, the son had transferred the car to his father’s name when he entered into service with the Air Force to be used by the father during the period of the son’s military service. The father further testified that he had been paying all expenses and costs incidental to the operation of the automobile, including insurance payments, but that he did not "use [the car] that much right now”.
By decision dated January 28, 1977 the State commissioner affirmed the discontinuance of the entire grant stating that "[Appellant’s contention that he is not the actual owner of said vehicle is contrary to the credible evidence presented at the hearing. The credible evidence does establish that appellant, the owner of a 1969 Mercury which is not essential to his family’s needs, failed to utilize such resource in order to reduce or eliminate his need for public assistance.”
*62 The parents thereupon commenced the instant article 78 proceeding asserting that the administrative determination was not supported by substantial evidence; that termination of the grant without the prior determination of the value of the Mercury and whether its sale would result in a cash surplus sufficient to meet their needs was error; and finally that termination of assistance to the children based on the parents’ failure to dispose of available resources was error. The Appellate Division confirmed the commissioner’s determination finding it supported by substantial evidence and concluding that the "determination that this resource should have been utilized to reduce public assistance to petitioners and their children was proper”.[1] Leave to appeal was granted by this court, and we now modify the disposition below.
At the outset we note our agreement with the Appellate Division that there was substantial evidence to sustain the commissioner’s findings that the husband was the owner of the automobile and that it was not essential to his family’s needs. The evidence presented demonstrated that he was the registered owner of the vehicle and that he paid all costs relating to its operation. Moreover, while the husband testified that the car was used by the family to purchase groceries and to obtain his unemployment check he also stated that the grocery store was located near his home and that public transportation was available. Accordingly, the record contained evidence sufficient to support the administrative determination in these respects.
It is within the framework of these affirmed factual findings —that the parents failed to utilize a nonessential resource for their, and their children’s, support — that we turn to the issue on which we predicate our modification. At all levels below, once these facts were determined or sustained, the sanction imposed was termination of the entire AFDC grant, to the parents as well as to their children. We now hold that without an additional determination of a present lack of need on the part of the children it was error to discontinue assistance to them.
Our analysis begins with the recognition that we are not here presented with the issue of whether the State and local *63 welfare departments may compel a parent receiving AFDC benefits to apply nonessential resources to his or her own support and that of his or her child who is also receiving AFDC benefits.[2] With this proposition we have no quarrel. Instead, this case presents the question of how this objective is to be accomplished, i. e., whether by the imposition of familiar sanctions against the parent or as well by withholding benefits from the child.
The AFDC program is a joint Federal and State operation designed to provide financial assistance to families with needy children. Its express purpose is to provide aid to dependent children. (Social Services Law, § 343; US Code, tit 42, § 601.) That the protection of dependent children is the paramount goal of the program has often been expressed. Indeed, as recently stated by the Supreme Court of the United States: "The public’s interest in this particular segment of the area of assistance to the unfortunate is protection and aid for the dependent child whose family requires such aid for that child. The focus is on the child and, further, it is on the child who is dependent * * * The dependent child’s needs are paramount”. (Wyman v James, 400 US 309, 318.)
Recognition that the needy child is the primary beneficiary of the AFDC program has most often found articulation in cases similar to the one at bar — where termination or reduction of benefits to the child is sought because of some wrong committed by the parent. Commencing with King v Smith (392 US 309) numerous courts have held that needy children may not be penalized by loss of public assistance on the basis of their parents’ conduct. (See, e.g., Rush v Smith, 573 F2d 110, 118; Bradford v Juras, 331 F Supp 167, 170; Cooper v Laupheimer, 316 F Supp 264, 269.) In King v Smith (supra) the Supreme Court held invalid an Alabama "substitute father” regulation which required the disqualification of otherwise eligible children if their mother "cohabited” with any single or married able-bodied man regardless of the existence of any obligation on the part of that man to support the mother’s children. The court stated that "Congress must have intended that the children in such a situation remain eligible *64 for AFDC assistance notwithstanding their mother’s impropriety”. (392 US 309, 329.)
The lower courts of this State have been equally vigilant in assuring the continued protection of needy children despite the "sin of the parent”. (Rush v Smith, 573 F2d 118, supra.) For example in Payne v Sugarman (39 AD2d 720, affd on other grounds 31 NY2d 845), the Second Department held that notwithstanding the refusal of the parent to comply with a local agency’s demand to execute a bond and mortgage pursuant to section 360 of the Social Services Law, the benefits to the children could not be terminated. Decisions in the First and Third Judicial Departments of the Appellate Division are to similar effect. (See, e.g., Matter of Foster v Blum, 71 AD2d 758 [3d dept]; Matter of Mitchell v Toia, 63 AD2d 890 [1st dept]). Only the Fourth Department has taken a contrary view. In Foster, the Third Department, when confronted with a factual situation indistinguishable from the present, concluded that "Children’s ADC grants cannot be reduced absent a showing of lack of need, notwithstanding the parents’ willful actions which render the parents ineligible for such benefits”. (Matter of Foster v Blum, supra, p 757; see, also, Matter of Paskoff v Toia, 56 AD2d 631.)[3]
We agree. Our decision is premised on several policy considerations. First, in view of the primary goal of the AFDC program, protection of the needy child, any reduction in assistance directed to a dependent child without a corresponding decrease in that child’s need, plainly thwarts the purpose of the program. There is no provision of statute or regulation which provides authority for the actions taken by respondent. To the contrary, we find support for our present conclusion in the fact that several of the State commissioner’s own regula *65 tions, dealing with instances of parental misconduct analogous to the present case, specifically provide that benefits to the remaining members of the family shall continue despite the actions of the parent. (See, e.g., 18 NYCRR 351.2 [e] [2] [iv] [failure to co-operate in obtaining child support]; 18 NYCRR 352.30 [d] [noncompliance with the employment training and rehabilitation requirements of State law]; 18 NYCRR 352.30 [f] [refusal to co-operate in applying for SSI benefits].)[4]
Second, while we recognize the department’s obligation to preserve the public fisc by compelling recipients of public assistance to utilize their own resources for their support, we are persuaded that there are alternative means available to accomplish that objective without resorting to terminating aid to needy children. The department can, as they did here, discontinue benefits to the culpable parent while continuing assistance to the innocent children.[5] As previously noted, respondent’s own regulations dealing with other instances of parental misconduct specifically provide for this sanction. A second possible option available to respondents would be to institute support proceedings in Family Court to compel the parents to apply their assets to the support of the child.
Accordingly, for the reasons stated the judgment of the Appellate Division should be modified, without costs, to the extent of vacating that portion of the order of the Appellate Division which confirmed the determination of the commissioner terminating the AFDC grant to the children.
Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Meyer concur.
Judgment modified, without costs, in accordance with the opinion herein and, as so modified, affirmed.

. Pursuant to both judicial and statutory stays, respondents have continued to provide assistance to the children pending the ultimate determination of this proceeding. As to the parents, however, no assistance has been awarded since January, 1977.

. Moreover we note that the issue we now address involves the termination of benefits to a child previously determined to be in need of support. To be distinguished are the procedures available to welfare officials when parent and child first seek to establish eligibility for AFDC benefits. The proper disposition in such instances is not addressed or considered. (Cf. Goldberg v Kelly, 397 US 254.)

. Charleston v Wohlgemuth (332 F Supp 1175, affd 405 US 970), relied on by respondents, does not require a contrary result. In Charleston a three-Judge District Court sustained a Pennsylvania regulation which denied AFDC benefits to welfare recipients who owned certain types of real estate and who refused to sign a lien agreement giving the State a mortgage interest in that property. The court noted that the "duty to execute the forms rests with adults; the denial of benefits extends to the entire family unit.” (Id., at p 1181.)
Insofar as pertinent here, the decision in Charleston was predicated on a determination that the Pennsylvania regulatory scheme did not run counter to the provisions of the Federal Social Security Act. Our decision in the instant case, however, is premised not on a finding of inconsistency with Federal statute or policy, but instead on a recognition that, taken in the absence of any authorizing statute or regulation, the department’s actions were unauthorized.

. Inasmuch as we are not now confronted with either statute or regulation authorizing termination of benefits to an entire family unit based on parental refusal to apply nonessential resources to the support obligation, we need not address the constitutional issue tendered by petitioners (cf. Tucker v Toia, 43 NY2d 1). Accordingly, we express no view on whether such a statute or regulation, if adopted, would pass constitutional muster.

. It appears from the record that the saving to the State in consequence of the termination of the parents’ grant far exceeds the value of the 1969 Mercury.