■ In the Matter of AUDREY PORTER, Petitioner, v JOSEPH D'ELIA, as Commissioner of the Nassau County Department of Social Services, et al., Respondents.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent Commissioner of the New York State Department of Social Services, dated December 11, 1985, and made after a statutory fair hearing, which affirmed a determination of the local agency to reduce the petitioner's grant of Aid to Families with Dependent Children (hereinafter AFDC) by 10% each month to recoup utility payments made by the agency on behalf of the petitioner.

Adjudged that the petition is granted, the determination of the respondent State Commissioner is annulled, on the law, with costs, and the matter is remitted to the Supreme Court, Nassau County, for a determination as to counsel fees.

The petitioner mother and her three children are recipients of public assistance under this State's AFDC program, which receives Federal financing. This grant is issued to her by the Nassau County Department of Social Services (hereinafter the agency).

In November 1984 the petitioner was granted a fair hearing to challenge, inter alia, the agency's withholding of a portion of her AFDC grant to make direct payments to the Long Island Lighting Company (hereinafter LILCO) for electricity bills. On February 1, 1985, the State Commissioner confirmed

the Hearing Officer's determination that the agency had failed to establish the existence of a voluntary and informed request by the petitioner, as required by 18 NYCRR 352.29 (e), to rechannel her grant directly to LILCO.

On April 10, 1985, the petitioner received a shutoff notice from LILCO for unpaid bills during the period that the agency was rechanneling funds to the utility provider. She requested a fair hearing to review the agency's failure to pay her utility arrears. The State Commissioner in a decision dated May 29, 1985, directed the agency to review its records and to determine whether the utility bills were paid and to take appropriate action to avoid a shutoff of the petitioner's utility services.

By letter dated August 21, 1985, the petitioner was advised that the agency planned to recoup $63.20 (10% of her AFDC grant) from three consecutive checks and $8.25 the following month for paying bills for the period of March 3, 1983 to May 3, 1983, and January 10, 1985 to March 11, 1985. The notice also informed the petitioner: "If you believe this recoupment will cause you undue hardship, you may have a conference to review this decision at any time before the proposed date of reduction of your grant. If you wish a conference, please [telephone] * * * You may also request a fair hearing".

The agency paid those bills on August 26, 1985. At a fair hearing requested by the petitioner, she testified that efforts to contact her caseworker to discuss the effect of the reduction of her grant were futile. The State Commissioner confirmed the determination of the Hearing Officer that the agency had paid the utility bills, and, noting that the petitioner claimed that the recoupment from her grant would cause her undue hardship, sustained the determination to reduce the family's AFDC grant by 10% to recoup the utility payments. The State Commissioner stated that it is the responsibility of the recipient who claims undue hardship to request a conference or otherwise sustain her undue hardship claim to the agency.

Initially, we note that "[i]t is well-settled that the determination of an administrative agency will be accepted by the courts if it has warrant in the record and a reasonable basis in law" *(Matter of Willcox v Stern,* 18 NY2d 195, 203). The primary question to be decided on this appeal is whether the Omnibus Budget Reconciliation Act of 1981 (hereinafter OBRA; Pub L 97-35, 42 USC § 602 [a] [22]; 45 CFR 233.20 [a] [13] [A]), which directs that "[t]he State must take all reasonable steps necessary to promptly correct any overpayment", eliminated the rule stated in *Matter of Gunn v Blum* (48

NY2d 58, 64) that " '[c]hildren's [AFDC] grants cannot be reduced absent a showing of lack of need' ".

Recently, in *Matter of Jessup v D'Elia* (69 NY2d 1030), the Court of Appeals affirmed this court's finding that the local agency properly denied the petitioner's AFDC application on behalf of her minor son because the petitioner owned an automobile valued in excess of $1,500, the statutory resource limit *(see,* 42 USC § 602 [a] [7] [B]; 45 CFR 233.20 [a] [3]; 18 NYCRR 352.23 [b] [2]). In *Jessup,* the petitioner's reliance on *Matter of Gunn v Blum (supra)* was rejected because the decision in that case was premised on the fact that there was "neither 'statute [nor] regulation authorizing termination of benefits to an entire family unit based on parental refusal to apply nonessential resources to the support obligation' " *(Matter of Jessup v D'Elia, supra,* at 1031, quoting from *Matter of Gunn v Blum, supra,* at 65, n 4). The OBRA now provides a legal framework for determining eligibility for AFDC. Thus, in *Knapton v Kitchin* (113 AD2d 540, *appeal dismissed* 67 NY2d 917) the Appellate Division, Third Department, confirmed the agency's determination that the petitioners' receipt of $3,570.11 from a testamentary trust made the family ineligible for aid for a calculated period because the payment of AFDC benefits to a family with excess income would be violative of the Federal Government's lump-sum policy *(see,* 42 USC § 602 [a] [17]) and would jeopardize Federal assistance for New York in the financing of the program.

The *Jessup (supra)* case does not apply to the circumstances of this case. While the State and local welfare departments must preserve the public fisc by compelling recipients of public assistance to utilize their own resources for their support *(Queal v Perales,* 126 Misc 2d 692, *revd on other grounds* 122 AD2d 542), the petitioner in this case makes a claim of undue hardship. We do not find that the general direction to *"take all reasonable steps necessary* to promptly correct any overpayment" *(see,* 45 CFR 233.20 [a] [13] [A]; emphasis supplied) eliminates the requirement that the eligible children's lack of need must be determined before reducing the AFDC grant to the family unit. Social Services Law § 106-b, in authorizing administrative regulations, provides that "[t]he procedures for correcting overpayment shall be designated to minimize adverse impact on the recipient, *and to the extent possible avoid undue hardship"* (emphasis supplied). It is clear that the Legislature enacted the statute to conform to the AFDC program's primary purpose, which is the protection of the needy child. "The dependent child's needs are paramount"

*(Wyman v James,* 400 US 309, 318). Therefore, the 10% reduction of the AFDC grant in the instant case, without any showing of the dependent children's diminished needs, is violative of public policy.

Finally, we find that the petitioner is entitled to an award of counsel fees, since she has prevailed in this proceeding to secure a Federally guaranteed right *(see, Matter of Torres v Perales,* 121 AD2d 386; 42 USC §§ 1988, 1983, 601 *et seq.).* Accordingly, the matter is remitted for a determination of (1) whether counsel fees should not be awarded because of extraordinary circumstances, and (2) in the event they are awarded, the amount of such fees *(see, Matter of Torres v Perales, supra).* Niehoff, J. P., Weinstein, Kunzeman and Spatt, JJ., concur.