OPINION OF THE COURT
Glenn R. Morton, J.
Petitioners have originated this CPLR article 78 proceeding, *58 as a class action, to review respondents’ determination to deny allocation of the income of an institutionalized Medicaid recipient to the maintenance needs of his noninstitutionalized spouse, based upon the latter’s available resources. The matter was initially heard at the March 19, 1990 Special Term of this court, and thereafter held in abeyance pending petitioners’ related motion for class certification. Petitioners’ motion for class certification was thereafter argued at the June 11, 1990 Special Term of this court, at which time all issues were deemed finally submitted.
The underlying facts are not in dispute. Petitioner Kenneth Conrad is 79 years old and a permanent resident of a residential health care facility. His wife, petitioner Caroline Conrad, remains in the marital residence. Mr. Conrad entered the residential health care facility in October of 1988 as a private pay patient, but became eligible for Medicaid as of March 1989. Consequently, effective April 1, 1990, the local Department of Social Services determined that Mr. Conrad must apply his entire net income of $645.81 per month toward the cost of his residential care. On the other hand, Mrs. Conrad’s minimum maintenance needs under the associated regulatory standards are $479 per month, which would appear to meet her actual regular expenses. However, her only income is $246 per month as a Social Security benefit. Nonetheless, the respondents have denied the administrative application and appeal to set aside to her "the amount needed to bring the income of the spouse * * * up to the” regulatory standards, as provided by the Department regulations at 18 NYCRR 360-4.9 (c). The basis of respondent’s determination was the availability of Mrs. Conrad’s lone bank account of approximately $10,000 as a resource for her maintenance. In this regard, the Commissioner relies upon section 360-4.3 (f) (1) (iii) (e) of the Department regulations, which states that "[i]f the spouse * * * of a person whose institutionalization places him/her in permanent absence status * * * does not have enough income and resources to meet their own needs, an amount will be deducted from the person’s income in accordance with section 360-4.9”. Resources, as opposed to income, would encompass Mrs. Conrad’s bank account (18 NYCRR 360-4.4 [a] [1], [2]).
Petitioners assert three causes of action. First, that respondents were required under the regulations to make their determination solely on the basis of Mrs. Conrad’s income, without regard to resources, as previously construed by this court in the case of Antinore v Perales (Sup Ct, Genesee *59 County, index No. 37201); second, to the extent those regulations have been recodified, that the Department’s construction is arbitrary and capricious as applied; and, third, that in so doing the respondents are liable for depriving petitioners their civil rights under the laws of the United States. In point of law, respondents objected that the noninstitutionalized spouse’s resources may now be considered pursuant to regulations enacted after the Antinore decision, and that class certification is not warranted. That the determination herein was arbitrary and capricious or in violation of petitioners’ Federal civil rights is generally denied.
As submitted by petitioners, this court previously construed former section 360.5 (e) (1) of the Department regulations, on its face and despite broader Federal regulations, to permit consideration only of the noninstitutionalized spouse’s income in determining those maintenance needs for which the income of an institutionalized Medicaid recipient could be utilized. That decision, in Antinore v Perales (supra), was rendered July 6, 1987. Subsequently, without substantially amending former section 360.5 (e) (1) itself, the State Commissioner added a new section 360.7 (b) (4) to the Department regulations in order to conform with Federal regulations. The new section specifically conditioned that "if the spouse or family in the community does not have sufficient income or resources to meet their own needs, an amount will be deducted from the patient’s income, if any, to bring the income of the spouse or family in the community up to the higher of the medical assistance standard or the public assistance level” (emphasis added). Thereafter, part 360 of the Department regulations was recodified in its current configuration, effective March 1, 1989, specifically integrating the utilization formula now contained in section 360-4.9 (c), with the condition now contained in section 360-4.3 (f) (1) (iii) (e) that the spouse of an institutionalized recipient "does not have enough income and resources to meet their own needs” (emphasis added).
In this context, the court discerns no practical difference in the distinction between "income or resources” as opposed to "income and resources”. The fact that the set aside is ultimately determined under section 360-4.9 (c) according to the noninstitutionalized spouse’s income is not logically inconsistent with the initial determination of need based upon both income and resources. Further, the Commissioner’s pronouncements that the subsequent amendments change no existing Medicaid requirements or policies is simply not per *60 suasive as a matter of regulatory construction in the face of the clear language of the regulations.
As advanced by respondents, it appears from the foregoing that, as a matter of regulatory construction, this court’s decision in Antinore v Perales (supra) had been implicitly overruled and was no longer controlling at the time of petitioners’ application herein. Petitioners’ first cause of action is therefore denied.
Petitioners’ second cause of action, insofar as it attributes respondent’s error in relation to Antinore v Perales (supra) is, by virtue of the foregoing, insufficient on its face. Nonetheless, for the purposes of a summary determination (CPLR 409 [b]), petitioners’ pleading may be construed liberally as supported by the record (People ex rel. Brooklyn Union Gas Co. v Miller, 253 App Div 162; Matter of Litemore Elec. Co. v Kawecki, 48 Misc 2d 347) in order to preserve an inartfully pleaded but potentially meritorious claim (see generally, Rovello v Orofino Realty Co., 40 NY2d 633).
In substance, the regulatory scheme, on its face, requires only a finding that the income and resources of the noninstitutionalized spouse are generally insufficient to meet her maintenance needs as a prerequisite to utilization of the institutionalized spouse’s income. Thus, the essential issue before this court is limited to whether the discretionary determination of the respondents to deny utilization of Mr. Conrad’s income for the maintenance of Mrs. Conrad was arbitrary and capricious or an abuse of discretion (CPLR 7803 [3]; see generally, Matter of Diocese of Rochester v Planning Bd., 1 NY2d 508; Matter of Adelman v Bahou, 85 AD2d 862; Matter of Douglas v Miller, 55 Misc 2d 303, affd 31 AD2d 889). Specifically, an agency’s interpretation of its own rules is to be upheld unless it is irrational or unreasonable and the administrative determination is to be accepted by the courts if it has warrant in the record and a reasonable basis in law (see generally, Matter of Howard v Wyman, 28 NY2d 434; Matter of Huntington TV Cable Corp. v State of New York Commn. on Cable Tel., 94 AD2d 816, affd 61 NY2d 926; Matter of Watkins v Toia, 57 AD2d 628, affd 46 NY2d 773; Matter of Gamble v Lavine, 82 Misc 2d 444).
Here, it is apparent that the Department’s interpretation of the regulations would require that the noninstitutionalized spouse’s resources be reduced to the minimal Medical Assistance level, e.g., $3,250 (cf., 18 NYCRR 360-4.7). The *61 respondent’s position that the noninstitutionalized spouse be required to exhaust her resources, so as to become herself a virtual public charge (cf., 18 NYCRR 352.23) before she was eligible for support from her institutionalized spouse was irrational and had no basis in law (see, Matter of Venezia v Venezia, 144 AD2d 948; Matter of Nester v Nester, 135 AD2d 878; Matter of Albany County Dept. of Social Servs, v Englehardt, 124 AD2d 140). As such, the respondents arbitrarily deviated from the reasonable and humane basis upon which these regulations must be interpreted (see generally, Matter of Moffett v Blum, 14: AD2d 625).
In retrospect, it is observed that the respondents’ interpretation of the regulations has now been statutorily superseded by section 366-c of the Social Services Law in order to conform with the new Federal standard of 42 USC § 1396r-5, generally effective September 30, 1989. By virtue thereof, in cases such as that at bar, the value of resources is considered only initially in determining the eligibility of the Medical Assistance recipient and the allocation of those resources between spouses. Thereafter, the community spouse’s monthly allocation from the institutionalized spouse’s income is determined without further relation to those resources retained by the community spouse, except insofar as they generate income. Significantly, the 1989 level of the retainable assets was set at $60,000 to "enable the working poor to qualify for benefits, and eliminate much of the administrative and court costs associated with evaluating marginally eligible elderly and disabled persons, forcing liquidations of modest holdings, and obtaining court-ordered divisions of property” (1989 McKinney’s Session Laws of NY, at 2203). In approval, the Governor commented that "[o]ur senior citizens should not live their golden years in the shadow of impoverishment. Until this bill, the possibility of long-term care has carried such a threat. This bill removes that threat by guaranteeing that, in the event of the institutionalization of one’s spouse, the community spouse will be able to retain $1,500.00 a month in income and $60,000 in assets without jeopardizing Medicaid assistance for the other spouses’ health care costs” (1989 McKinney’s Session Laws of NY, at 2415).
The court therefore finds for the petitioners on their second cause of action, and remands to the local Department of Social Services for further proceedings not inconsistent herewith.
Petitioners’ civil rights claim is premised on 42 CFR 435.832, implementing 42 USC § 1396a (a) (17), which provides *62 that the State’s social services agencies must deduct from an institutionalized individual’s income an amount for the maintenance needs of a spouse at home. Absent from petitioners’ quotation of the regulation is the qualification that the amount of maintenance "must be based on a reasonable assessment of need”, with certain ceilings, but without a presumptive minimum (42 CFR 435.832 [c] [2]). Generally, within the statutory or regulatory stricture of "reasonableness”, a State has considerable discretion in forming the content of its Medicaid program (McKee v Likins, 261 NW2d 566 [Minn 1977]). Also, what may be considered "reasonable” by Federal standards may not be as liberal as those regulations are already implemented on the State level (see generally, Matter of Cheng San Chen v Toia, 67 AD2d 1085, affd 50 NY2d 826; see also, Matter of Rickey v Perales, 102 AD2d 977, affd 65 NY2d 651); and petitioners offer no proof or interpretative authorities in this regard.
However, it has been held in the reverse situation that where nursing home care is made available to eligible Medicaid recipients, their spouses cannot be held accountable beyond their means, and utilization must be done through the application of reasonable standards (Burns v Vowell, 424 F Supp 1135). By reducing the noninstitutionalized spouse’s resources to a presumptive Medical Assistance level, as here, the State has applied an arbitrary standard of need vis-á-vis the institutionalized spouse’s income, when the Federal regulation would, in this context, appear to provide for a factual determination as to the reasonableness of the noninstitutionalized spouse’s needs (compare, Herweg v Ray, 455 US 265; Schweiker v Gray Panthers, 453 US 34; cf., Manfredi v Maher, 435 F Supp 1106).
It may also be considered that neither the Federal statutes nor regulations can reasonably be interpreted to allow or authorize complete divestment of resources to become eligible for Medicaid benefits (Lerner v Division of Family Servs., 70 Wis 670, 235 NW2d 478 [1975]). It follows, a fortiori, that the posteligibility treatment of income and resources available to an institutionalized individual should comport with those standards applicable to the treatment of such for the purposes of initial eligibility. In essence, by allocating an institutionalized spouse’s entire income to the cost of Medicaid to the exclusion of the noninstitutionalized spouse’s maintenance needs, and despite the noninstitutionalized spouse’s own income deficit, the respondents are indirectly requiring the use *63 of the noninstitutionalized spouse’s lawfully retained resources toward the cost of the institutionalized spouse’s Medicaid to the point of virtual complete divestment. Such is not a reasonable standard consistent with the objectives of social legislation such as Medicaid (42 USC § 1396a [a] [17] [A]; Moffett v Blum, supra).
Under the joint Federal and State Medicaid assistance programs, the State is bound by Federal regulations in administering the program and, if there is any conflict, the Federal regulations prevail (Matter of Vetter v Poland, 72 AD2d 776). Given such, and that petitioners have set forth a direct conflict between State practice and specific Federal mandate (compare, Oberlander v Perales, 740 F2d 116, 119), it cannot be concluded that petitioners’ Federal claim is illusory or nominal only. Accordingly, petitioners have prevailed in securing a Federally guaranteed right (42 USC § 1983), so that they may be entitled to an award of attorney fees under 42 USC § 1988 (Matter of Torres v Perales, 121 AD2d 386). The order to be entered hereon must, therefore, be settled on notice to afford respondents an opportunity to demonstrate whether special circumstances exist which would bar an award of counsel fees (42 USC § 1988) and, if not, to fix a reasonable fee according to the applicable criteria (Matter of Porter v D’Elia, 135 AD2d 717; Matter of Carabello v Perales, 117 AD2d 598; Matter of Rahmey v Blum, 95 AD2d 294).
Finally, petitioners also seek class action status with notice of commencement to the potential members (CPLR art 9). The proposed class would consist of those chronic care Medicaid recipients and their spouses who have been prevented from allocating the institutionalized spouse’s income to raise the noninstitutionalized spouse’s income up to the appropriate Medical Assistance or Public Assistance standards because of respondent’s refusal to give stare decisis effect to Antinore v Perales (supra). Respondents oppose class certification inasmuch as Antinore v Perales was mooted by amendment of the regulations, the existence of a class has not been sufficiently demonstrated or identified, and the claims do not involve common questions of fact insofar as a case-by-case determination would be required.
Despite their misplaced reliance on Antinore v Perales (supra) by virtue of the foregoing it cannot be concluded that petitioners’ claims are spurious (Hoerger v Board of Educ., 98 AD2d 274). Given that the systematic manner in which respondents apparently applied the challenged resource stan *64 dards is not specifically challenged and that the actual size of the class is within respondents’ control, the numerosity requirement would be satisfied (CPLR 901 [a] [1]; Friar v Vanguard Holding Corp., 78 AD2d 83); and the number is manageable to the extent that there would be a finite number of similarly situated claimants which, with discovery, may be adequately identified and given notice (Goldman v Garofalo, 96 Misc 2d 790, mod on other grounds 71 AD2d 650, affd 50 NY2d 851). Generally, petitioners’ predicament would appear to be typical of those of the proposed class (CPLR 901 [a] [3]), and, given the expertise of their counsel and respondents’ financial resources, it is evident that the petitioners would fairly and adequately represent the interest of their class (CPLR 901 [a] [4]; Gilman v Merrill Lynch, Pierce, Fenner & Smith, 93 Misc 2d 941).
Further, the class is bound together by a common question of law as to the manner in which their claims for allocation should be determined. However, it does not follow therefrom that this common thread predominates over the individual questions affecting the members (CPLR 901 [a] [2]). In this regard, under the regulations as construed herein, the claim of each member of the proposed class may be established only after a case-by-case investigation and ad hoc evidentiary determination as to both entitlement and amount (Evans v City of Johnstown, 97 AD2d 1; Scott v Prudential Ins. Co., 80 AD2d 746), amounting to more than a simple computation of damages (compare, Mimnorm Realty Corp. v Sunrise Fed. Sav. & Loan Assn., 83 AD2d 936; Vickers v Home Fed. Sav. & Loan Assn., 62 AD2d 1171).
Moreover, class actions are not generally regarded as a superior means of adjudicating claims involving governmental operations (Matter of Delmar v Blum, 73 AD2d 252, affd 53 NY2d 105; Matter of Davis v Perales, 151 AD2d 749; Jiminez v Gross, 121 AD2d 382). Accepting that petitioners would represent a closed class for which there will be no subsequent claimants, it may also be assumed that those individuals aggrieved during the period in question have either exhausted or waived their remedies or the within decision may now be applied on a stare decisis basis (Matter of Delmar v Blum, supra; Williams v Blum, 93 AD2d 755; Matter of Froehlich v Toia, 71 AD2d 824; but cf., Felder v Foster, 71 AD2d 71).
It is also considered that petitioners have not demonstrated that those other adversely affected individuals would *65 not find relief in Family Court as specifically provided under the same set of laws and regulations (Social Services Law § 366 [2] [a] [7]; 18 NYCRR 360-4.9 [b]; cf., Matter of Septuagenarian v Septuagenarian, 126 Misc 2d 699). Although, for reasons of retroactivity and in the absence of objection, this court has chosen to entertain petitioners’ article 78 proceeding despite the existence of the other Family Court remedy (but cf., Matter of Ottinger v Voorhis, 213 App Div 561, affd 241 NY 49; Matter of Cavages, Inc. v Ketter, 56 AD2d 730; Matter of Simon v Bailey, 172 Misc 186), given that availability and the sui generis nature of the claims, it cannot be concluded that a class action provides a superior form of relief (CPLR 901 [a] [5]).
Petitioners’ application for class certification is therefore denied in its entirety and the court need not reach the issue of notice.