M. W. BURNS and Juanita Burns, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Raymond W. VOWELL, Commissioner of the State Department of Public Welfare, Individually and in his official capacity, Defendant.

Civ.A. No. 76–H–724.

United States District Court,
S. D. Texas,
Houston Division.

Aug. 30, 1976.

Jeffrey J. Skarda and Michael J. Steiner, Houston Legal Foundation, Houston, Tex., for plaintiffs.

Colin J. Carl, Asst. Atty. Gen., Austin, Tex., for defendant.

## MEMORANDUM AND ORDER

SEALS, District Judge.

As stated in the Memorandum Opinion signed and entered this day the Court is of the opinion that there exists in this case a question under the Eleventh Amendment and *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), of the propriety of requiring Defendant to make retroactive payments of amounts sought by Plaintiffs. The Court is of the opinion that this question has not been adequately briefed by the parties and that supplementary briefs must be filed before a ruling can be made which, if made in favor of Plaintiffs, would include an amendment and supplementation of the Order Granting Preliminary Injunction. Therefore, it is hereby ORDERED as follows:

1. Within fifteen (15) days of the entry of this Memorandum and Order Plaintiffs shall file a brief addressing the question of whether or not this Court has the authority to order payment of any retroactive benefits to Mrs. Burns.

2. Within thirty (30) days of the entry of this Memorandum and Order Defendant shall file a reply brief addressing the same question.

3. Plaintiffs may file a response to Defendants' brief within ten (10) days of receipt of the brief.

## MEMORANDUM OPINION

This cause of action is before the Court on Plaintiffs' application for a preliminary injunction. The parties have filed proposed findings of fact and conclusions of law, briefs on various questions, and a hearing was held on August 18, 1976, at which both argument and testimony were offered. The Court has considered all the pleadings, other instruments on file in this case, and the evidence offered at the hearing, and the Court is now of the opinion that a preliminary injunction should be issued in favor of Plaintiffs.

Before dealing with the facts and the applicable law, the Court would first dispose of a number of other matters. The Court has jurisdiction over the subject matter of this cause of action, 28 U.S.C. § 1343, and jurisdiction over the parties. Venue is proper in this district and division. 28 U.S.C. § 1391(b). At Plaintiffs' request the hearing held on August 18, 1976, was not consolidated with a hearing on the merits of the cause of action as it might have been under Rule 65(a)(2) of the Federal Rules of Civil Procedure. Defendant did not object to the hearing being directed only to the application for a preliminary injunction, and the Court is of the opinion that the posture of the case could not have permitted such an acceleration. Therefore, the preliminary injunction to be issued is not a final adjudication of the case on its merits, and it has no bearing on Plaintiffs' request for certification of a class action.

On the question of the class allegation, Plaintiffs claim the existence of the class of persons within the requirements of Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs have at no time made a motion for a class determination nor did they introduce at the hearing any evidence that the class action prerequisites have been met. However, Plaintiffs did request orally at the hearing that they be permitted to pro-

ceed solely on the question of the preliminary injunction for the named Plaintiffs, and that they be permitted to continue discovery as to the class for an ultimate decision on their request for a permanent injunction which would then bind the class. On this question the Court is of the opinion that in all reasonable probability Plaintiffs will be able to demonstrate the existence of a class within Rule 23. The Court is also of the opinion that the procedural scheme requested by Plaintiffs at this point in the litigation is the proper one. Therefore, the preliminary injunction to be issued shall have no bearing on Plaintiffs' alleged class action. Plaintiffs shall be permitted to continue class discovery and to seek a class certification as soon as practicable, and ultimately to seek a final adjudication of their request for a permanent injunction.

The final matter is whether or not a three-judge district court should be convened to hear this case. None of the parties has requested a three-judge court, and the Court is of the opinion that one is not required. However, this issue will be dealt with more fully below. Therefore, the facts of this case can now be outlined.

The basic facts of this cause of action are neither complex nor in dispute. On May 28, 1976, the parties filed their Stipulation of Fact which succinctly outline the basic facts. For the sake of completeness and in order to avoid unnecessary duplication of effort, the Court includes the stipulations in this opinion, and they are as follows:

1. Named plaintiff Juanita Burns suffers from Alzheimer's disease, a chronic neuropsychopathic disorder characterized by impaired intellectual ability and requires skilled nursing home care twenty-four (24) hours per day.

2. The total cost of Mrs. Burns' care, $537.90 per month, was paid by Medicaid until April, 1976.

3. On February 25, the State Department of Public Welfare notified Mr. Burns that, effective March 1, 1976, the amount of Medicaid vendor payments paid for Mrs. Burns' nursing home care would be reduced from $537.90 to $153.82, and that Mr. Burns would be liable for the additional $384.08.

4. Mr. and Mrs. Burns appealed this decision and an administrative hearing was held on April 5, 1976.

5. At the hearing Mr. Burns presented evidence alleging that he has necessary living expenses of at least $379.80 per month.

6. A decision (X1) was rendered April 5, 1976, sustaining the original decision, effective April, 1976, on the grounds that it complied with Texas State Department of Public Welfare Medicaid Eligibility Handbook (MEH), sections 3523, 2525, 2530, 2444.1 and 5532 (X2).

7. These regulations are portions of defendant's policy regarding the amount of Medicaid vendor payments paid for the care of an institutionalized Medicaid recipient.

8. These regulations provide that an amount equal to the monthly SSI standard payment amount, presently $157.70, is diverted from the couple's total income to meet the needs of an ineligible spouse.

9. These regulations provide under the facts of this case that any income in excess of the SSI standard payment amount is presumed to be available to the institutionalized spouse, and is applied against the cost of institutional care.

10. These regulations do not consider the actual needs or actual contribution of the ineligible spouse.

11. These regulations are based on provisions of the State plan as approved by HEW (X3), directives from the Department of Health, Education, and Welfare contained in a letter (X4), and Title XIX regulations, 45 C.F.R. 248.3 (X5).

12. Mr. Burns has income of $541.78.

At the hearing it was also brought out that Mrs. Burns receives $25.00 per month in Supplemental Security Income from the Social Security Administration which is paid to Mr. Burns and is used to pay some of Mrs. Burns' expenses. Mr. Burns is unable to engage in any gainful employment, and he spends between ten and twelve hours per day at the nursing home taking

care of Mrs. Burns. Mr. and Mrs. Burns have not resided together since April 15, 1974, and Mr. Burns filed for divorce on April 1, 1976, because a termination of the marital relationship would permit Mrs. Burns to receive full Medicaid payments under the current state regulations. However, Mr. Burns testified that he would dismiss the divorce proceeding if he received affirmative relief in this Court.

Mr. Burns' monthly income was stated to be $561.80 rather than $541.78 as indicated in stipulation 12. He receives $258.80 from Goodyear, his former employer, and $303.00 from Social Security. Mr. Burns testified that his living expenses are $409.80 as opposed to $379.80 as stated in stipulation 5. It was also brought out that the current Supplemental Security Income standard payment amount which the State would permit Mr. Burns to retain out of his income for his own needs is now $167.80 rather than $157.70 as indicated in stipulation 8. Thus, the figures offered at the hearing show that the State expects Mr. Burns to pay $394.00 toward Mrs. Burns' care.

As indicated in stipulation 1, Mrs. Burns requires and receives constant nursing care. According to the testimony of Ms. Joyce Purcell, administrator of the nursing home, Mrs. Burns is classified as receiving care known as Intermediate III, but that Mrs. Burns is actually receiving the higher more expensive level of care known as Skilled, though she is charged only for Intermediate III. The care classification is assigned by a physician of the State Department of Public Welfare. Ms. Purcell further testified that because Mrs. Burns' payments were in arrears for some five months, the last day on which Mrs. Burns would be permitted to remain in the nursing home would be August 24, 1976. However, at the request of the Court made at the hearing, Ms. Purcell sought and obtained from the Governing Board of the nursing home a fifteen-day extension in order to permit the Court to render this opinion. Therefore, the last day on which Mrs. Burns would have been permitted to remain absent affirmative relief·

from this Court would have been September 2, 1976.

Finally, Defendant offered in evidence the testimony of Mr. R. M. Bryant, Program Regulation Specialist, who works in the state administration of its Title XIX plan. In essence, Mr. Bryant's testimony was that the State plan and the regulations contained in the Medicaid Eligibility Handbook (MEH) are derived directly from and comport completely with the applicable federal regulation, 45 C.F.R. § 248.3. In particular Mr. Bryant testified that MEH §§ 3523, 3525, and 3530, derive from §§ 2.6 and 2.7–A of the State Plan, and that they all correspond to 45 C.F.R. § 248.3(b)(4)(ii) and (b)(5), that MEH § 5532 derives to § 2.6–A (2) of the State Plan, and that they all correspond to 45 C.F.R. § 248.3(b)(4)(i) and (b)(5), and that § 2.7–A ¶ 2 of the State Plan corresponds to 45 C.F.R. § 248.3(b)(1). However, Plaintiffs' counsel offered the counter argument that 45 C.F.R. § 248.-3(b)(4)(ii) does not apply here, but would only apply to the reverse of this case, i.e. if the income-earning spouse were institutionalized and the non-income-earning spouse were not institutionalized, and that it is 45 C.F.R. § 248.3(b)(1) which applies here. The Court is of the opinion that these are legal arguments which would go to a ruling on the validity of the regulations in question. Some preliminary observations must be made at this time before these legal issues can be discussed, but the Court would re-emphasize here that the hearing held and the opinion herein rendered go only to the preliminary injunction, and that a final adjudication of the validity of the regulations is not being made. It would also be appropriate at this time to address the three-judge court question.

In their original complaint plaintiffs anticipated and addressed the three-judge court question saying that such a court need not be convened as "plaintiffs may be granted their relief without resort to the constitutional grounds of their claim [and their] statutory grounds are sufficient to be dispositive of their cause of action." The Court is of the opinion that Plaintiffs' argu-

ment is correct and follows the ruling of the Supreme Court in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Under *Hagans* the initial determination must be made that there exists a substantial constitutional claim under 42 U.S.C. § 1983 to support jurisdiction under 28 U.S.C. § 1343(3). The Court is of the opinion that there is such a substantial question in the case at bar. Therefore this Court has "pendent jurisdiction to adjudicate the so-called 'statutory' claim—the alleged conflict between state and federal law." *Id.* at 532, 94 S.Ct. at 1376. This can be done "without determining that the [statutory] claim in its own right [is] encompassed within § 1343." *Id.* at 536, 94 S.Ct. at 1378. (citations omitted). When this jurisdictional theory is invoked then the statutory claim is decided first and the constitutional claim is only reached if the statutory claim is not dispositive. *Id.* at 543, 94 S.Ct. 1372. The constitutional claim can only be adjudicated by a three-judge court, *Id.*, but the single-judge court can reject the statutory claim and then convene a three-judge court to hear the constitutional claim.

> [T]he coincidence of a constitutional and statutory claim should not automatically require a single-judge district court to defer to a three-judge panel, which . . could then merely pass the statutory claim back to the single judge.

*Id.* at 544, 94 S.Ct. at 1383 (citations omitted). This theory is what Plaintiffs are proposing and it permits the Court to hear the statutory claim and give relief thereon. Therefore, the Court is of the opinion that it has jurisdiction to grant Plaintiffs the relief that they seek without convening a three-judge court. As stated previously, this opinion is only a ruling on Plaintiffs' application for a preliminary injunction. The Court is of the opinion that the prerequisites for a preliminary injunction have been satisfied in this case, but before the prerequisites are set forth and applied, the Court would discuss the basic underlying

legal question involved in this case which is whether or not it is proper for Defendant to presume income received by an ineligible non-institutionalized spouse to be available to an eligible institutionalized spouse.

■ The procedure used by Defendant and challenged by Plaintiffs has been referred to as "deeming," and has been defined as "a bureaucratic decision to deem a portion of the income of the non-institutionalized spouse available to the institutionalized spouse." Deford, *The Medicaid Deeming Procedure: The Intolerable Financial Burden on The Non-Institutionalized Spouse,* CLEARING-HOUSE REVIEW 12 (May 1976) (hereinafter referred to as Deford). The problem arises because of an apparent conflict between the applicable federal statutes and regulations, and the state regulations.

The federal statue which is applicable here is 42 U.S.C. § 1396a(a)(17)(B), (C) and (D), which provides in pertinent part as follows:

> A State plan for medical assistance must— . . . (17) include reasonable standards . . . which . . . (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and . . . (C) provide for reasonable evaluation of any such income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse . . .

The corresponding regulations propounded by the Secretary of Health, Education and Welfare, are contained in 45 C.F.R. § 248.-3(b), and § 248.21(a)(2)(i). These regulations provide in pertinent part as follows:

> § 248.3(b). With respect to both the categorically needy [1] and if they are included in the plan, the medically needy, a State plan must:

---

1. While the parties did not so stipulate, upon inquiry by the Court Plaintiffs' counsel stated that Mrs. Burns is categorically needy as

defined by 45 C.F.R. § 248.10(a)(1), and Defendant did not dispute the statement.

(1) Provide that only such income and resources as are actually available will be considered and that income and resources will be reasonably evaluated.

§ 248.21(a) *State plan requirements.* A State plan under title XIX of the Social Security Act must:

(2) With respect to both the categorically needy and if they are included in the plan, the medically needy;

(i) Provide that only such income and resources as are actually available will be considered and that income and resources will be reasonably evaluated.

The Texas State Plan does have sections corresponding to the requirements of these regulations, §§ 2.6 and 2.7–A ¶ 2, but even though the required sections in the Plan exist they were applied in such a way through the challenged sections of the Medicaid Eligibility Handbook that deeming was in fact used in arriving at the figure which Mr. Burns is expected to pay toward Mrs. Burns' nursing home expenses. The State Department of Public Welfare Hearing Officer stated that the decision "is in compliance with *Medicaid Eligibility Handbook Sections 3523, 2525, 3530, 3441.1 and 5532.*" Exhibit 1 to Stipulations of Fact. The Court is of the opinion that such a deeming procedure is inconsistent with the federal statute even though there exists in Texas a relative responsibility statute. Texas Family Code § 4.02.

The only case that this Court has been able to find which directly addresses the basic legal question here is *Franssen v. Juras,* 406 F.Supp. 1375 (D.Ore.1975) (three-judge court). There a deeming procedure in Oregon which is very similar to that in Texas was invalidated. There the court held as follows:

Congressional purpose to calculate need with real rather than presumed dollars is evident from the report of the House Ways and Means Committee that accompanied the Medicaid bill.

These provisions are designed so that the States will not assume the availability of income which may not in fact be available or over-evaluate income and resources which are available. Examples of income assumed include support orders from absent fathers which have not been paid or contributions from relatives which are not in reality received by the needy individual.

406 F.Supp. at 1378 (footnote omitted). According to one commentator, certain recently proposed new regulations from the Secretary of Health, Education and Welfare are a reaction to the decision in Franssen. Deford at 12 nn. 6 & 7. To date those proposed regulations have not been officially enacted, and it is not known when they will be enacted.[2] Therefore, the Court is basing its ruling on the regulations as they exist as of the date of the entry of this Memorandum Opinion.

 While this Court is in agreement with the basic holding in *Franssen*, it is also of the opinion that *Franssen* did not go far enough. There is legislative history which would indicate that deeming is never a proper procedure within the requirements for the establishment of means for reasonably evaluating financial responsibility of non-institutionalized spouses. Any apparent conflict between subsections (B) and (D) of 42 U.S.C. § 1396a(a)(17) can be resolved against the use of deeming.

In evaluating these problems, the Senate Finance Committee which prepared the report on the Medicaid Statute offers this explanation: "Those provisions are designed so that the States will not assume the availability of income which may not, in fact, be available . . ."[11] Such an apparent expression of purpose and meaning of availability is also supported by HEW's own *Handbook of Public Assistance Administration*, wherein the statement is made that "[a]vailable in-

---

**2.** On June 28, 1976, the Court entered a Memorandum and Order requiring the Secretary of Health, Education, and Welfare to inform the Court if he desired to be a party in the case at bar or to file an amicus brief. On July 16, 1976, the Court granted the Secretary's Motion For Extension of Time so that the Secretary's official position was not available to the Court at the time of the hearing on the application for the preliminary injunction.

come and resources are income and resources which are 'in hand' or under the control of the individual . . ."[12] Neither of these statements, however, answers the question of how to correlate subsection (D) · with subsection (B). Whereas they appear to indicate that "available income" means what it says, they go no further than the apparent meaning of subsection (B) itself.

[11] S.REP. No. 404, U.S.Code Cong. & Admin. News, 89th Cong., 1st Sess., pp. 1943, 2018 (1965).

[12] Supp.D, § D–4230(4)

Another passage from the legislative history may provide the bulwark on which to make the necessary argument.

> The [Senate Finance] Committee has heard of hardships on certain individuals by requiring them to provide support and to pay for the medical care needed by relatives. The Committee believes it is proper to expect spouses to support each other and parents to be held accountable for the support of their minor children and their blind or permanently and totally disabled children even though 21 years of age or older. Such requirements for support may reasonably include the payment by such relatives, *if able*, for medical care.[13] (Emphasis added.)

[13] *Surpa [sic]* note 11.

Deford at 14. Thus, while the income of a non-institutionalized spouse can be considered, it must be done through the application of reasonable standards and not on the basis of an irrebuttable presumption that the money is available for the care and support of the institutionalized spouse. Deeming as employed by the Texas regulations is not consistent with the federal statutes and regulations, and cannot be employed to impute income. Thus where nursing home care is made available to eligible recipients, their spouses cannot "be held accountable beyond their means." *Id.*, the Texas relative responsibility law applies in this case but only insofar as it allows the State "to demand reasonable payment from a spouse or parent who is able." *Id.* at 15. At the hearing Plaintiffs' counsel repre-

sented that Mr. Burns would be willing and able to pay up to $152.00 toward Mrs. Burns' care rather than the $394.00 which Defendant has demanded, but at this point in the proceedings the Court is not going to attempt to treat the question of reasonable allocation of financial responsibility on an ineligible non-institutionalized spouse, or the question of what are the proper procedures for the State to employ.

Deeming procedures have been invalidated in other contexts and this Court is of the opinion that they are sufficiently analogous as to be of substantial precedential value for this case. In *Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975), a New York procedure was invalidated which reduced shelter allowances of recipients of Aid to Families with Dependent Children on the presumption that the incomes of nonpaying lodgers living in the household were available to the family. *Van Lare* dealt with the imputation of income from one with no legal responsibility to provide it, and it also went to the question of whether or not imputed income can be deemed to be actually available.

> Thus the New York regulations at issue are also invalid. This is clearly so insofar as they are based on the assumption that the nonpaying lodger is contributing to the welfare household, without inquiry into whether he in fact does so.

*Id.* at 346, 95 S.Ct. at 1747. Therefore a deeming scheme without further inquiry into the facts as they exist in reality rather than on a balance sheet is invalid. It can be argued that the legal responsibility distinction between *Van Lare* and the case at bar does not lessen *Van Lare's* precedential value in the context of a case such as this one where it arises in a state that has a relative responsibility statute.

In *McLaughlin v. Wohlgemuth*, 398 F.Supp. 269 (E.D. Pa. 1975), the court invalidated a Pennsylvania regulation which raised "a conclusive presumption that the income of a legally responsible relative is available to dependents living in the same assistance unit." *Id.* at 276. There the court "concluded that the income of a pub-

lic assistance unit does not include the income of an absent parent or spouse, except to the extent that that parent or spouse actually contributes to the maintenance of the assistance unit on a regular basis." *Id.* at 279. That conclusion was based in part on *Van Lare.* Thus, deeming can be invalidated where it is applied to the income of a non-legally responsible person, *Van Lare,* or where it is applied to the income of a legally responsible person, *McLaughlin, Franssen.* Legal responsibility is not the real question in this type of case, but rather it is a question of the economic realities in a given situation. Irrebuttable presumptions are not consistent with fairness or the apparent intent of Congress in enacting the Medicaid statutes. *Van Lare* holds against the propriety of deeming and this Court is of the opinion that the impropriety is no less real when applied to a person with some legal responsibility for support.

> The issue of financial responsibility should not cloud the horizon; as in *McLaughlin*, it is not a question of legal obligation, but a question of how financial support, and how much of it, should be made available to the recipient. The rebuttable presumption is the logical result, since it assumes an obligation by the legally responsible party while not placing that person in an untenable position or jeopardizing the position of the recipient of the benefit system, the institutionalized spouse.

Deford at 17. Surely in the case at bar there can be nothing more untenable than convening a proceeding called a "Fair Hearing" at which Plaintiffs were permitted to be represented by counsel and to offer evidence where the result was virtually a foregone conclusion by virtue of the State's regulations mandating the use of deeming of income. Thus the Court is of the opinion that Medicaid Eligibility Handbook Sections 3523, 2525, 3530, 3441.1 and 5532 are in all probability invalid. However, because the Court is only granting at this time a preliminary injunction as to the two named Plaintiffs, the Court is not making a ruling on the merits of Plaintiffs' cause of action and is not issuing a declaratory judgment as to the validity of the state regulations under attack.

■ As indicated previously, this opinion is being rendered in connection with the preliminary injunction to be issued. It remains only now for the Court to outline briefly the four prerequisites for the issuance of a preliminary injunction. They are as follows: (1) A substantial likelihood that Plaintiff will prevail on the merits; (2) A substantial threat that Plaintiff will suffer irreparable injury if the injunction is not granted; (3) That the threatened injury to Plaintiff outweighs the threatened harm the injunction may do to Defendant; and (4) That granting the preliminary injunction will not disserve the public interest. *Canal Authority v. Callaway,* 489 F.2d 567 (5th Cir. 1974).

■ First, the Court has engaged in some discussion of the legal issues in this case and the merits thereof. While the Court is reserving a final decision on the merits, it is of the opinion that Plaintiff's likelihood of success is more than merely substantial, it is highly probable. What really remains now in this case prior to a final determination of the merits is a determination of the class action allegation and a determination of the scope and substance of any permanent injunction that may be issued.

Second, the irreparable injury to Plaintiffs if Mrs. Burns is forced to leave the nursing home is so apparent and substantial as to be beyond question. The injunction must be granted both to preserve the status quo and to prevent the improper termination of Mrs. Burns' nursing home care. Mrs. Burns has no adequate legal remedy, and her eviction would clearly impair the Court's ability to render a final judgment.

Third, any harm that may befall Defendant is the expenditure of money; the threatened injury to Plaintiffs is the cessation of indispensable nursing case for Mrs. Burns. The weight of the relative harms is clearly in favor of Plaintiffs.

Fourth, the public interest can only be served by the avoidance of unnecessary pain and suffering for the named Plaintiffs,

and by the final adjudication of the propriety of certain important state welfare regulations. The public interest as expressed in the federal statutes and regulations involved here also favors the issuance of the injunction.

Lastly, the Court would mention the possible sovereign immunity and Eleventh Amendment problem under *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), regarding the retroactive award of payments. Plaintiffs have both raised the problem and attempted to offer a solution, and Defendant has filed a partial response. Plaintiffs claim that the problem can be resolved on the ground that the money to be paid for retroactive relief in this case would come from a separate fund within an exception to the sovereign immunity problem. Plaintiffs further raise a Texas statute, Art. 695j-1 § 20, V.A.T.S., which could also go to the question of waiver by the state, another exception specifically treated in *Edelman*. The Court is of the opinion that these questions have not been adequately briefed by the parties, and that judgment on this aspect of the case even in regard to the preliminary injunction should be reserved until briefs can be filed. However, until a judgment on this issue can be rendered the injunction is intended to grant Plaintiffs the maximum possible relief and to preserve the status quo. Therefore, contemporaneously with the issuance of this Memorandum Opinion and the Order Granting Preliminary Injunction, the Court will also issue an order setting a briefing schedule on the Eleventh Amendment problem, and if that problem is resolved in Plaintiffs' favor a supplemental order will be issued amending the preliminary injunction accordingly.

## ORDER GRANTING PRELIMINARY INJUNCTION

The Court, having considered Plaintiffs' application for a preliminary injunction and having held a hearing on said application at which all parties were represented, for the reasons stated in the Memorandum Opinion signed and entered this day; hereby OR-DERS that a Preliminary Injunction is herein issued to provide as follows:

1. Defendant, Raymond W. Vowell, or his successors, as commissioner of the State Department of Public Welfare, his agents and employees, and all persons in active concert and participation with him are restrained and enjoined from doing any act or causing or permitting any act to be done which would in any way interfere with, adversely affect, or jeopardize the present or future status of Mrs. Juanita Burns as a resident and patient in the Blalock Nursing Home.

2. Defendant, Raymond W. Vowell, or his successors, as Commissioner of the State Department of Public Welfare, or his designated agent or employee shall reimburse the Blalock Nursing Home for the full amount of the cost of the nursing care and residence of Mrs. Juanita Burns as of August 1, 1976, and shall continue to pay the full amount of the cost of the nursing care and residence of Mrs. Juanita Burns in the future until further order of this Court or other court of competent jurisdiction.

The Clerk shall file this Order Granting Preliminary Injunction and provide all parties with a true copy.