Elizabeth BROWN and James Brown by his next friend Michael Brown, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,

v.

Wayne A. STANTON, Individually and as the Administrator of the Indiana Department of Public Welfare, and Elizabeth Samkowski, Individually and as Director of the Marion County (Indiana) Department of Public Welfare, Defendants-Appellees.

No. 79–1459.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1979.

Decided Jan. 30, 1980.

As Amended Feb. 29, 1980.

Peter L. Cassady, Legal Service Organization of Indiana, Inc., Indianapolis, Ind., for plaintiffs-appellants.

Jeffrey K. Baldwin, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before CUMMINGS and PELL, Circuit Judges, and GRANT, Senior District Judge.*

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

GRANT, Senior District Judge.

This case involves a husband and wife who are no longer residing together due to a medical disability which requires the long-term institutionalization of one of the spouses. The court below ruled that, in computing the Medicaid benefits payable to the institutionalized spouse, the State of Indiana may consider the resources of the noninstitutionalized spouse as available to the institutionalized spouse—provided the state conducts individualized fact findings regarding the financial needs of the non-institutionalized spouse before determining what is potentially available. The grava-men of this appeal is that the district court's judgment continues to permit the State of Indiana to enforce the spousal re-sponsibility of a noninstitutionalized spouse through the indirect method of denying the institutionalized spouse his or her full Med-icaid benefits, thereby raising the specter of eviction if spousal contribution is not forth-coming. Appellants suggest the proper procedure to enforce spousal responsibility is for the state to provide full benefits to the institutionalized spouse and to then ini-tiate direct action against the unwilling noninstitutionalized spouse under a state spousal support statute.

■ This class action, brought under 42 U.S.C. § 1983,[1] was filed on behalf of James Brown, an incompetent Medicaid recipient, by his guardian, together with his noninsti-tutionalized spouse. Elizabeth Brown, seeking declaratory and injunctive relief against regulations adopted as part of the Indiana State Medicaid Plan, I.C. 12–1–7–14.9; 42 U.S.C. § 1396 *et seq.* As a Medic-aid recipient, Mr. Brown's expenses at his nursing home were partially paid by the Indiana Department of Public Welfare and the patient himself. Additionally, however, the defendant welfare officials had certain policies and regulations which required that Mrs. Brown pay a certain amount each month over to the nursing home. Her as-signed amount was determined in accord-ance with a state-wide, uniformly applied mathematical formula that did not take into account her own individual financial needs. She was obliged to pay the money each month and, if she did not, the nursing home would be faced with a non-payment situation. Under the Indiana plan, Medic-aid funds would not be used to pay any part of the amount assigned to Mrs. Brown. Apparently she was either unable or unwill-ing to pay her assigned amount to the nurs-ing home. Defendants nevertheless *deemed* part of Mrs. Brown's income and resources to be "available", within the meaning of 42 U.S.C. § 1396a(a)(17)(B),[2] to the Medicaid recipient, Mr. Brown.

The Browns filed this class action to chal-lenge the *deeming regulations of defend-ants.* The district court conducted a trial on December 20, 1978, and issued a Memo-randum Opinion on February 16, 1979. The court certified the class and declared the

---

1. Although jurisdiction has been neither raised as an issue nor denied by the court below, this court notes that plaintiffs' complaint, filed De-cember 1, 1978, alleges jurisdiction under both 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This observation is made to distinguish the recent holding in *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979) wherein the Court ruled that juris-diction under 28 U.S.C. § 1343 did not encom-pass a claim that a state welfare regulation is invalid because it conflicts with the Social Se-curity Act. The *Chapman* Court distinguished a situation, such as in the case at bar, where jurisdiction under 28 U.S.C. § 1331 is alleged and the amount in controversy exceeds $10,-000. 99 S.Ct. 1905, 1910, 1946. In addition, *Chapman* can be distinguished in that in the case at bar plaintiffs have made substantial constitutional allegations as well as the suc-cessful statutory allegation. The Court's hold-ing in *Hagans v. Lavine,* 415 U.S. 528, 532–543, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), allows the conclusion that we continue to have jurisdic-tion to adjudicate the statutory claim under 28 U.S.C. § 1343. *Dunn v. New York State Dept. of Labor,* 474 F.Supp. 269, 274 (S.D.N.Y.1979).

2. 42 U.S.C. § 1396a(a)(17)(B) reads:
 (a) A state plan for medical assistance must—
 (17) include reasonable standards . . . for determining eligibility for and the extent *of medical assistance under the plan which* . . . (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient . . . ..

challenged regulatory scheme[3] to be contrary to 42 U.S.C. § 1396a(a)(17) and thus invalid under the Supremacy Clause. The court stated: "By this ruling the court does not suggest that the state may not seek contributions from a noninstitutionalized spouse. . . . It is the arbitrariness and irrebuttable presumptiveness of the established limits as applied to any given case that renders the challenged state regulations invalid". p. 6 of Mem.Op. The court held that to comply with § 1396a(a)(17) of the Social Security Act, the Indiana welfare regulations must provide for a factual determination in each case that gives "due consideration to the individual obligations and particular needs of each spouse and family",[4] citing *Herweg v. Ray*, 443 F.Supp. 1315, 1319 (S.D.Iowa 1978), *appeal pending*. After ruling on the merits, the court denied the plaintiffs' request for attorney fees pursuant to 42 U.S.C. § 1988.[5]

Plaintiffs contend on appeal that (1) the lower court's ruling on the merits, although an improvement in the law, has erroneously stopped short of the required abolition of all Medicaid deeming, and that (2) plaintiffs have erroneously been denied attorney fees.

*I—Medicaid Deeming*

The section of the Social Security Act which is in issue, 42 U.S.C. § 1396a(a)(17), provides in part:

(a) A state plan for medical assistance must—

\* \* \* \* \* \*

(17) include reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient . . ., (C) provide for reasonable evaluation of any such income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan *unless such applicant or recipient is such individual's spouse* or such individual's child . . .. (Emphasis supplied.)

The crux of the problem is the apparent conflict between subparts (B) and (D) of Section 1396a(a)(17). Subpart (B) provides that only income and resources available to the Medicaid recipient shall be considered while subpart (D) suggests that income and resources of spouses can be considered.

At this juncture we should set out (1) plaintiffs' definition of "deeming" and (2) this court's perception of the levels of inquiry that confront courts faced with situations similar to the case at bar.

(1) Plaintiffs argue that deeming occurs either (a) where a participating state refuses to individualize the spousal responsibility, or (b) where a participating state punishes the institutionalized Medicaid recipient by depriving that person of his or her benefits because the spouse refuses to pay the assigned share of the costs of institutionalization.

■ (2) The first level of inquiry would be to determine the amount of income and resources belonging to the noninstitutionalized spouse that is potentially available for the support of the institutionalized spouse. This determination must include consideration of factors such as living expenses that do not proportionately decline due to the absence of the institutionalized spouse. The need for an individualized factual de-

---

**3.** Indiana Department of Public Welfare Regulation 2–214, §§ 3200, 3222, 3222.1, 3313, and 3432.

**4.** Plaintiffs have advised this court that in response to the judgment entered below, the Indiana General Assembly has passed "Senate Enrolled Act No. 457" which, among other things, requires the Department of Public Welfare to conform to the decision of the lower court.

**5.** Section 1988 states, in pertinent part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

termination, rather than an arbitrary irrebuttable presumption, was correctly expressed in the court below. In suggesting a scheme considered acceptable, the court stated: "The contemplated scheme would allow the state to require proof of the particular needs and individual obligations of each spouse and family, and would then deduct these verified sums from the existing resources and income to determine the amount, if any, that is reasonably available for support of the institutionalized spouse." Mem. Op. p. 7. The district court's approach to this first level of inquiry is most equitable and is affirmed without change. However, we must agree with plaintiffs' contention that the lower court's ruling fell short of the abolition of an irrebuttable presumption contained in what we perceive as the second level of inquiry, i. e., whether the income and resources of the noninstitutionalized spouse that have been determined to be potentially available are actually received by the institution on behalf of the disabled spouse. The resulting question then arises: How shall the State of Indiana enforce upon an unwilling spouse the responsibility to contribute?

This second level of inquiry has neither been addressed by this court nor by any other circuit,[6] but several district courts have confronted the deeming issue. In *Burns v. Vowell*, 424 F.Supp. 1135 (S.D.Tex. 1976), a spouse required 24-hour care in a nursing home. Plaintiff spouses challenged state regulations that included an irrebuttable presumption that income over a certain level was available to the institutionalized spouse without considering the actual needs or actual contribution of the ineligible spouse. The *Burns* court defined deeming as "a bureaucratic decision to deem a portion of the income of the non-institutionalized spouse available to the institutionalized spouse". 424 F.Supp. 1135, 1139. In granting a preliminary injunction,[7] the court ruled that subparts (B) and (D) of Section 1396a(a)(17) prohibited deeming, and addressed the level one inquiry by stating:

> Thus, while the income of a noninstitutionalized spouse can be considered, it must be done through the application of reasonable standards and not on the basis of an irrebuttable presumption that the money is available for the care and support of the institutionalized spouse. . . . Thus where nursing home care is made available to eligible recipients, their spouses cannot 'be held accountable beyond their means'.

424 F.Supp. 1135, 1141. The *Burns* court commented on the level two inquiry by stating: "The Texas relative responsibility law applies in this case but only insofar as it allows the state 'to demand reasonable payment from a spouse or parent who is able.' "[8] *Id.* It is noteworthy that in that court's preliminary injunction, the state welfare agency was ordered to pay, *pendente lite*, the full amount of the cost of the nursing care of the institutionalized spouse.

In *Franssen v. Juras*, 406 F.Supp. 1375 (D.Or.1975), a three-judge district court faced a similar challenge by a class of plaintiffs wherein one spouse was an institutionalized Medicaid recipient and the other a noninstitutionalized spouse subject to state regulations that presumed the availability of income above a certain standard allowance. The *Franssen* court held that the state regulations were invalid as inconsistent with § 1396a(a)(17), and addressed the level two inquiry by noting that subpart (D) of § 1396a(a)(17) is:

> intended to authorize a *state* mechanism for enforcing financial responsibility of relatives, not to permit presumptions forbidden elsewhere in the statute. Oregon until recently had such a mechanism, but it never applied to Medical Assistance

---

**6.** However, related appeals are pending in both the Eighth Circuit, *Herweg v. Ray*, 443 F.Supp. 1315 (S.D.Ia.1978), and the D.C.Circuit, *Gray Panthers v. Secretary, Dept. of Health, etc.*, 461 F.Supp. 319 (D.D.C.1978).

**7.** See note 9, *infra*.

**8.** The court in *Burns* relied heavily on Deford, *The Medicaid Deeming Procedure; The Intolerable Financial Burden on The Non-Institutionalized Spouse*, Clearinghouse Review 12, May 1976.

and the Plaintiffs here had incomes well below the level that would have activated a demand for contribution. Nothing in our decision in this case, we should note, prevents the State from re-enacting a relative responsibility law and making it applicable to Medicaid, nor from making and enforcing regulations reasonably evaluating the income and resources actually available. We require only that such efforts to impose responsibility conform to federal law.

(Emphasis added.) 406 F.Supp. 1375, 1379.

In *Manfredi v. Maher*, 435 F.Supp. 1106 (D.Conn.1977), the court similarly [9] declared that state welfare regulations that automatically attributed income from the non-institutionalized spouse were invalid as inconsistent with § 1396a(a)(17). The *Manfredi* court noted that Connecticut, as Indiana, is one of fifteen states which has elected to assess Medicaid eligibility on the basis of a historical standard, by referring to the state's medical plan which was in effect on January 1, 1972. 42 U.S.C. § 1396a(f). This has relevance in that certain 1977 regulations of the Department of Health, Education and Welfare are inapplicable to states that have exercised the § 1396a(f) option. These 1977 regulations, which apply to only 35 states, have limited any level two presumption of contribution, under the facts of *Manfredi*, to the first six months after the spouses cease to live together:

Where both spouses apply as aged, blind or disabled or where both spouses are SSI eligible, *and cease to live together, income and resources are considered mutually available without proof of contribu-*

*tion for the first six months after the month they cease to live together in a common household. After that, only actually contributed income and resources may be considered in determining the eligibility or amount of assistance of either individual spouse.* 42 Fed.Reg. at 2686, 45 C.F.R. § 248.3(b)(2)(i) ** (emphasis supplied).

435 F.Supp. 1106, 1112.[10] After noting that this regulation did not apply to Connecticut, the *Manfredi* court nevertheless held that it was unreasonable, under 42 U.S.C. § 1396a(a)(17)(C), for the state to assess the income of two persons on the theory that they maintain a single household (which is HEW's criteria for determining eligibility for and amount of SSI benefits disbursed to an elderly person), when it is a recognized fact that one member of that couple is confined to a long-term medical care facility. The court continued:

Such an assumption flies in the face of simple, economic reality, as the impoverished lifestyle of the named plaintiffs in this action clearly demonstrates. By comparison, it would be highly reasonable to treat such couples as separate individuals for Medicaid purposes;

\* \* \* \* \* \*

Indeed, the existence of [Connecticut support statutes] reinforces the cases for separate individual consideration of spouses in the plaintiff class, since they provide the Commissioner with a remedy to employ in cases of unwarranted neglect, where for example, a wealthy individual refuses to support an institutionalized

---

9. In *Manfredi*, both spouses were SSI eligible because they were, for example, aged; therefore, both received Medicaid or at least were Medicaid eligible. In the case at bar, Mrs. Brown is only 57 years old and admittedly not Medicaid eligible. We note this factual distinction, but do not consider it a barrier to the relevancy of the court's holding.

** 43 Fed.Reg. 45204 recodified this provision as 42 C.F.R. § 435.723(c).

10. If the noninstitutionalized spouse is not SSI eligible, as in the case at bar, there is no six-

month waiting period. 42 C.F.R. § 448.-3(b)(2)(ii) (1977).\*\*\* Regulations formerly appearing in C.F.R. Title 45 as Part 248 have been redesignated into Title 42 as Part 448. In light of the above regulations, the *Burns v. Vowell* case, *supra*, has been placed on the long term inactive list in the Southern District of Texas without a final hearing on the merits. See note 13, 435 F.Supp. 1106, 1112.

\*\*\* 43 Fed.Reg. 54204 recodified this provision as 42 C.F.R. § 435.723(d).

spouse, even though she would be financially able to do so. [Footnotes omitted.] 435 F.Supp. 1106, 1114–15.[11]

In *Gray Panthers v. Secretary, Dept. of Health, etc.*, 461 F.Supp. 319 (D.D.C.1978), an organization of older adults brought suit to challenge the federal regulations,[12] which allow the 15 states electing the § 1396a(f) option to promulgate their deeming regulations. The court held that the federal regulations were invalid as inconsistent with 42 U.S.C. § 1396a(a)(17). In interpreting the "available to the applicant" language in subpart (17)(B), the *Gray Panthers* court interrelated subpart (D) in a footnote:

> Subpart (D) of the statute is not to the contrary. That subpart merely prohibits a state from taking into account the 'financial responsibility' of anyone except spouses and parents. While it may allow a state to enforce its financial responsibility laws against a spouse or parent, this subpart does *not* suggest that the amount of contribution from that person should be a deemed amount. In fact, this is exactly what Congress had intended subpart (D) to mean.

> The committee believes it is proper to expect spouses to support each other and parents to be held accountable for the support of their minor children and their blind or permanently and totally disabled children even though 21 years of age or older. Such requirements for support may reasonably include the payment *by such relative, if able, for medical care.* S.Rep.No.404, 89th Cong., 1st Sess. 78, *reprinted in* [1965] U.S.Code Cong. & Admin.News, pp. 1943, 2018 (emphasis added).

461 F.Supp. 319, 322, note 5. While the court's language in this footnote refers to "the amount of contribution" and the "deemed amount", the suggestion of en-

forcement through state responsibility laws implies that the fact of actual contribution should not be presumed.

Finally, two cases from the District of Minnesota suggest recent support for plaintiffs' position. In *Hanke v. Nyhus*, 470 F.Supp. 742 (D.Minn.1979), a similar class of plaintiffs challenged state welfare rules that were construed as presuming the availability of income and resources of spouses, who are involuntarily living apart because one spouse is in a nursing home, without proof of actual contribution. The *Hanke* court, after noting that Minnesota, as Indiana, has taken the § 1396a(f) option, and after referring to the *Manfredi, Franssen, Burns* and *Gray Panthers* decisions, *supra*, held that:

> defendants' policy of considering personal property owned by the spouse of an institutionalized MA applicant an available resource regardless of whether the spouse will contribute the property to the applicant's use is inconsistent with the federal statute and regulations which require that only such income and resources as are available to the applicant be considered in determining eligibility for MA benefits. This conclusion in no way affects the right of the state to pursue any claim it may have for contribution from the noninstitutionalized spouse pursuant to relative responsibility laws.

470 F.Supp. 742, 746. *Nursing Home Residents' Advisory Council v. Kelly*, 470 F.Supp. 747 (D.Minn.1979) was handed down the same day as the *Hanke* decision and the basic holding is identical except that *Hanke* dealt with personal property while *Kelly* dealt with a spouse's interest in real property.

 We find that the district court cases discussed above represent the majority trend against all forms of deeming and

---

11. The court in *Manfredi* continued with a second basis for invalidating the Connecticut deeming regulations. As a lesser included holding, the court held that 42 U.S.C. § 407, which prohibits the invasion of any monies payable under the S.S.A. through "execution . . . or other legal process," prohibited the Connecticut scheme. The court found that the

state system threatened the liable relative with the imminent probability that his or her spouse will be evicted from the nursing home if contributions are not promptly forwarded, and that such administrative coercion was included in § 407's prohibition of "other legal process".

12. 42 C.F.R. §§ 435.734, 436.602 and 436.711.

therefore hold that administrative coercion resultant from state procedures which presume actual contribution is inconsistent with 42 U.S.C. § 1396a(a)(17). In light of the Indiana spousal support statute, I.C. 31–2–2–1,[13] we hold that the state welfare agency is required to make an upward adjustment in Medicaid benefits to compensate for the portion left unpaid by an unwilling spouse, and then to proceed under the above statute to seek reimbursement directly from the unwilling spouse. To hold otherwise would be to deny an eligible recipient his full benefits because of the improper action of his or her spouse. *Cf. Gunn v. Toia,* 45 N.Y.2d 896, 411 N.Y.S.2d 8, 383 N.E.2d 560 (N.Y.Ct.App.1979).

A further justification for our decision exists in a recently promulgated federal regulation of the Health Care Financing Administration, 42 C.F.R. § 433.135 (1978), which reads in part:

Subpart D—Third Party Liability

§ 433.135—Third party liability; determination of liability and collection procedures.

(a)—*Basis and purpose.* This subpart implements sec. 1902(a)(25) and 1903(d)(2) of the Act by setting forth State plan requirements concerning—

(1) The legal liability of third parties to pay for services provided under the plan; and

(2) Treatment of reimbursements by a third party to a State for medicaid furnished under the plan.

(b)—*Definitions.* For purposes of this subpart, "third party" means any entity that is or may be liable to pay all or part of the medical cost of injury, disease, or disability of an applicant or recipient of medicaid.

(c)—*Requirements for State plans.* A State plan must provide that requirements of paragraphs (d)–(g) of this section are met.

(d)—*Determining liability of third parties.* The medicaid agency must take reasonable measures to determine the legal liability of third parties to pay for services under the plan.

(e)—*Payment of claims.* (1) If the agency has determined that—

(i) Third party liability exists for part or all of the services provided to a recipient, and

(ii) The third party will make payment within a reasonable time, the agency must pay only the amount, if any, by which the allowable claim exceeds the amount of the liability.

(2) The agency may not withhold payment for services provided to a recipient if third party liability or the amount of liability cannot be determined, or payments will not be available, within a reasonable time.

(f)—*Reimbursement for medicaid.* The agency must seek reimbursement for medicaid to the extent of a third party's legal liability if—

(1) Liability is determined after medicaid is provided to an individual; or

(2) Liability was determined before providing medicaid but the agency failed to make use of it.

---

13. 31–2–2–1 reads:

Support payments for dependents—Order for payment to clerk of court—Where any person or persons, by the terms of any court order or decree, is ordered to pay support money to or for the dependent wife, husband, father, mother, child or children of the person or persons, and the dependents are being supported in whole or in part by public funds, or where the parent of the dependents has sought the assistance of the agency designated to administer Title IV–D [42 U.S.C. §§ 651–660] of the federal Social Security Act, the court shall order that the payment of such support money be made to the clerk of the circuit court of the county wherein the decree or order is entered. When the support order is for a child or children who qualify for assistance under IC 12–1–7–1, or when the order is for a child or children whose parent has sought the assistance of the agency designated to administer Title IV–D of the federal Social Security Act, the court shall order that the payment of the support be made to the agency of state government designated to administer Title IV–D of the federal Social Security Act in compliance with the federal rules and regulations established for the administration of Title IV–D of the federal Social Security Act. The order shall contain the date when the first support payment is to be made and the frequency of the payments thereafter.

We construe § 433.135(e)(2) as supporting our holding that the Indiana welfare agency must make an upward adjustment in the institutionalized spouse's Medicaid benefits if a contribution is not made by an able but unwilling spouse within a reasonable time. In addition, we construe § 433.135(f) as supporting, our holding that the proper method of enforcing spousal responsibility is through the state spousal support statute.[14]

## II—Attorney Fees

The question is whether the district court erred in failing to award plaintiffs attorney fees under 42 U.S.C. § 1988, which reads in part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 983, 1985, and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

As amended Pub.L. 94–559, § 2, Oct. 19, 1976, 90 Stat. 2641.

The court below denied the request, stating:

Plaintiffs' complaint was predicated upon constitutional claims under 42 U.S.C. § 1983 as well as upon a meritorious statutory claim that ultimately became the sole basis for the Court's decision, the Court having never reached the plaintiff's constitutional issues. . . . And most importantly, the plaintiffs were well acquainted with the numerous published precedents that had dealt with issues identical to those presented herein solely upon the plaintiffs' well-pleaded statutory claim. Under these circumstances the Court is unable to conclude that this action is properly classified as one to enforce the civil rights acts within the meaning and purpose of section 1988.

Mem.Op. at 7, 8.

In *Bond v. Stanton*, 555 F.2d 172 (7th Cir. 1977), we addressed a circumstance where

---

14. At oral argument counsel for the State of Indiana raised, without citation of authority or prior treatment in Appellees' Brief, the speculation that the State of Indiana would not have standing to proceed against the unwilling spouse. In light of our holding that the State is required to make an upward adjustment of benefits to compensate for an unwilling spouse, it is apparent that the State would have standing to bring an action for reimbursement. In general, a state Attorney General may institute such suits as he deems necessary for the enforcement of the laws of the state and the protection of public rights. 7 Am.Jur.2d *Attorney General*, § 11. Both the Medicaid statute's general purpose of providing benefits to those eligible and the Medicaid regulations' (42 C.F.R. § 433.135(f) (1978)) specific requirement that the state seek reimbursement, support a conclusion that the Indiana Attorney General has standing against the unwilling spouse. In the *Franssen* case, *supra*, the court stated that "The relevant section [42 U.S.C. § 1396a(a)(17)(D)] is intended to authorize a *state* mechanism for enforcing financial responsibility of relatives, not to permit presumptions forbidden elsewhere in the statute. Oregon until recently had such a mechanism, but it never applied to Medical Assistance and the Plaintiffs here had incomes well below the level that would have activated a demand for contribution. *Nothing in our decision in this case*, we should note, *prevents the State from re-enacting a relative responsibility law and making it applicable to Medicaid*, . . .." (Emphasis supplied.) 406 F.Supp. 1375, 1379. We note that Indiana has recently enacted parental responsibility laws that have directly involved the state agency responsible for administering Title IV–D of the Social Security Act in the collection of support payments. I.C. 12–1–7–1.1; 31–2–2–1. As in *Franssen*, nothing in our decision prevents the State of Indiana from enacting a state spousal support statute that directly involves the Indiana Department of Public Welfare, or other appropriate state agency in the collection of spousal support payments. In any event, this standing issue is not presently before this court and should be resolved in an Indiana forum. The Supreme Court of Indiana, in *State v. Rankin*, 260 Ind. 228, 294 N.E.2d 604 (1973) *appeal after remand* 313 N.E.2d 705, stated that "the Attorney General need not state in his complaint the explicit legal basis for his authority to bring suit. When the opposing party raises the issue it is then up to the trial judge to determine from all the circumstances whether the Attorney General does have the authority to initiate the action." *Id.* at 605.

plaintiffs brought suit under 42 U.S.C. § 1983, yet prevailed on statutory rather than constitutional grounds. In holding that attorney fees were nevertheless recoverable under 42 U.S.C. § 1988, we stated:

It is equally clear that Congress intended that the act extend to statutory claims asserted under § 1983. Congress was aware that many § 1983 cases are, like the present case, decided on statutory rather than constitutional grounds and intended that Pub.L.No.94–559 cover all such cases. See Remarks of Senators Kennedy and Abourezk, 122 Cong.Rec. S17052, 17053 (daily ed. Sept. 29, 1976), and of Representative Drinan, *id.* at H12159 (daily ed. Oct. 1, 1976).

555 F.2d 172, 174. We further held that the Eleventh Amendment does not bar such fee awards against state officials.

Although it is established that attorney fees may be awarded in cases such as the one at bar, such an award is subject to the limited discretion of the district court. As was stated in *Kimbrough v. Arkansas Activities Ass'n.*, 574 F.2d 423 (8th Cir. 1978):

Our determination that the Act was intended to encompass the instant case does not, of course, require an award of attorney's fees. "[C]ourts have wide discretion in determining whether or not an award of attorney's fees is warranted, giving due consideration to the principle that the prevailing party should recover attorney's fees 'unless special circumstances would render such an award unjust.'" *Planned Parenthood v. Citizens for Com. Action*, 558 F.2d 861, 870 (8th Cir. 1977), *quoting Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

574 F.2d 423, 427. Indeed, in our recent opinion in *Dawson, et al. v. Pastrick, et al.*, 600 F.2d 70 (7th Cir. 1979), we expressly characterized the trial court's discretion as narrow, and further reiterated that "In *Davis v. Murphy*, 587 F.2d 362, 364 (7th Cir.

1978), we noted that 'a prevailing plaintiff should receive fees almost as a matter of course.'" at 79.

██ In *Gagne v. Maher*, 594 F.2d 336 (2d Cir. 1979), the Second Circuit held that a district court erred in constricting its view of its own discretion by refusing to award any fee for time spent on the fee application. In the case at bar, we hold that the district court likewise erred in its constricted view that it lacked discretionary authority to award fees where the plaintiffs prevailed on a statutory rather than a constitutional claim. We, therefore, remand the attorney fees question to the court below to determine (1) whether the requested fees are exorbitant and (2) whether there are any special circumstances that would render such an award unjust. We note that the fact that plaintiffs are represented by Legal Services Organization of Indiana, which is in part federally funded, does not represent a special circumstance that would preclude an award. *Hairston v. R & R Apartments*, 510 F.2d 1090 (7th Cir. 1975).[15] As the case at bar stands, an award appears appropriate; however, we shall defer to the expertise of the district court in determining the amount. Circuit Rule 18 shall not apply.

REVERSED AND REMANDED IN PART.

PELL, Circuit Judge, dissenting in part, concurring in part.

A result of the majority opinion reduced to a simple statement appears to me to be as follows. A is in a nursing home. Part of the attendant expense are paid by the state. A's spouse is legally obligated to pay for A's support which in this case would be the amount above that paid by the state. A's spouse has income sufficient over and above his or her own needs to pay the amount of the nursing home bill the state has not paid. A's spouse does not wish to do so. A's spouse does not have to do so, and the state has to pay the whole cost.

---

**15.** Plaintiffs have additionally referred to the unpublished Memorandum in *WWRO, et al. v. Andreano, et al.*, No. 75–C–102 (E.D.Wis. Oct. 30, 1978), where the district court likewise rejected the argument that a legal service type organization should be awarded a reduced fee because it is a publicly funded group.

I do not consider it an answer to say that the state can take action against the spouse to recover that which the spouse was legally obligated to pay. I think it unrealistic to think that the state will engage in a multiplicity of continuing individual lawsuits to recover the money that it should not have had to pay out in the first place. Under the majority opinion, there is an open invitation for the spouse to decide that he or she does not wish to make the excess payment. In this era of inflation, and giving consideration to the human inclination not to pay out money when one doesn't have to, I think it reasonable to conclude that few would decline the invitation.

Unfortunately, and with the greatest respect for the reasoning expressed in the majority opinion, it appears to me that once more a roadblock has been placed in the way of a reasonable and legal endeavor of state authorities to curtail unnecessary expenditures of public funds in social programs. I think the district court correctly struck down the "deeming" test, but provided a reasoned alternative to the state whereby the costs would be borne as they should be, I would adopt the opinion of the district court on this aspect of the matter as the opinion of this court, and therefore respectfully dissent from the majority opinion which overrules that part of the district court opinion.

I also agree with the district court's denial of attorney fees. The majority opinion in remanding on this issue indicates that fees are allowable under 42 U.S.C. § 1988. That section, however, provides for fees where actions are brought to enforce a provision of section 1983 of the Civil Rights Act. Elsewhere the majority opinion in finding jurisdiction relies only on 28 U.S.C. § 1331, which would not seem to encompass claims under section 1983, which claims are covered only under 28 U.S.C. § 1343.

I otherwise concur in the majority opinion.